# HOLLANDER ET AL. *v.* LUBOW

[No. 107, September Term, 1975.]

*Decided February 11, 1976.*

The cause was argued before SMITH, LEVINE, ELDRIDGE and O'DONNELL, JJ., and CHARLES E. ORTH, JR., Chief Judge of the Court of Special Appeals and CHARLES AWDRY THOMPSON and CHARLES E. MOYLAN, JR., Associate Judges of the Court of Special Appeals, specially assigned.

*Norman P. Ramsey*, with whom were *Joseph A. Schwartz, III* and *George Beall* on the brief, for Hollander, Hoffberger and Rodowsky, part of appellants. *William B. Somerville*, with whom was *Douglas G. Worrall* on the brief, for Maryland National Bank, other appellant.

*David Freishtat* for appellee.

SMITH, J., delivered the opinion of the Court.

We shall here hold that seeking and obtaining information as to the fact that an individual was a partner in a firm under the circumstances of this case does not constitute an invasion of privacy. Accordingly, we shall set aside judgments totaling $106,001.01 obtained by appellee, Ralph Lubow (Lubow), against appellants, Leroy Hoffberger (Hoffberger), Lawrence F. Rodowsky (Rodowsky), and Maryland National Bank (Maryland National), for an alleged invasion of privacy.[1]

---

1. Although this case is styled in the name of Morton Hollander and an

As the prior opinions of this Court reflect, there has been extensive litigation growing out of Lubow's former employment by Merchants Mortgage Company (Merchants Mortgage). *See Merchants Mortgage Co. v. Lubow,* 275 Md. 208, 339 A. 2d 664 (1975); *Schwartz v. Merchants Mort. Co.,* 272 Md. 305, 322 A. 2d 544 (1974); and *Suitland Dev. v. Merchants Mort.,* 254 Md. 43, 254 A. 2d 359 (1969). This is but another chapter in that ongoing story.

On February 21, 1973, Lubow filed suit in the Superior Court of Baltimore City against Morton J. Hollander (Hollander), Hoffberger, Rodowsky, and Maryland National. Count 1 of the declaration against Hollander was dismissed by Lubow with prejudice. Count 2 charged that Hoffberger "in June, 1969, without the consent or authority of [Lubow], express or implied, violated [Lubow's] right to privacy, intruded into and invaded his seclusion, solitude and private affairs, by contacting [Maryland National] Bank and by wrongful and unlawful means did use economic pressure and influence which he possessed as a substantial customer of the Defendant Bank and did obtain from the Bank, private and confidential information of a business nature indicating among other matters [Lubow's] financial interest in Traders Mortgage Company." It was claimed that "[t]he above intrusion into [Lubow's] private affairs was not discovered until October 10, 1971 when the Defendant Hoffberger submitted an affidavit in other proceedings acknowledging the above intrusion," and that Lubow "could not with the exercise of reasonable diligence have discovered the intrusion of his private affairs prior to the affidavit of October 10, 1971." Lubow claimed that " [a]s a result of this wrongful invasion of [his] privacy, [he] suffered great expense in attempting to discover the source of the information," and that "these acts directly and proximately resulted in the infliction upon [him] of injury in the form of severe emotional distress." The third count of the

appeal was entered to this Court on his behalf, he prevailed below as will appear, except that on the fifth count, which we shall discuss, judgment was entered in favor of Lubow against him with no damages awarded.

declaration was against Maryland National. It was similar in content to the second count and incorporated "each and every allegation contained in the [preceding] paragraphs of th[e] Declaration with the same force and effect as [t]herein fully set forth." The fourth count was against Rodowsky. It was similar in form and incorporated the prior counts. It alleged that Rodowsky "urg[ed] the Defendant Leroy Hoffberger to . . . gather information concerning Lubow's interest in Traders Mortgage Company and other personal matters." The fifth count was against Rodowsky, Hollander, Hoffberger, and Maryland National. After again incorporating prior paragraphs by reference, it was claimed that Maryland National, Hollander, Hoffberger, and Rodowsky conspired to invade Lubow's privacy by conspiring to make known that Lubow had a financial interest in Traders Mortgage Company. Each count of the declaration claimed $25,000 as compensatory damages and $150,000 as punitive damages. Demurrers interposed by each defendant were overruled. Each defendant then entered a general issue plea and also pleaded limitations, claiming that the cause of action accrued more than three years prior to the filing of the suit.

Lubow pursuant to Maryland Rule 610 moved for summary judgment on the issue of liability only. If the judge who considered that motion (not the one who presided at trial) addressed himself to the issue of limitations, that fact does not appear in the record. Under Rule 610 d 1 in passing on the motion he was required to consider "the pleadings, depositions, and admissions on file, together with the affidavits, if any . . . ." Accordingly, he should have addressed himself to the issue of limitations. Summary judgment as to liability was entered against the individual defendants but denied as to Maryland National. The matter proceeded to trial before a jury. It returned a verdict of $4,000 compensatory damages and $30,000 punitive damages against Hoffberger on the second count; $1.01 compensatory damages and $10,000 punitive damages against Maryland National on the third count; $4,000 compensatory damages and $10,000 punitive damages against Rodowsky on the

fourth count; $4,000 compensatory damages and $10,000 punitive damages against Rodowsky on the fifth count; $4,000 compensatory damages and $30,000 punitive damages against Hoffberger on the fifth count; and a verdict in favor of Maryland National on the fifth or conspiracy count. It found no compensatory damages and no punitive damages against Hollander under the fifth or conspiracy count.

A number of interesting questions are raised by this appeal, not the least of which is whether the claims were barred by limitations. It will not be necessary for us to address ourselves to those matters, however, because in the view we take of this case summary judgment should have been entered in favor of all defendants. Maryland National moved for summary judgment. The other defendants did not, but under Rule 610 d 1 "[w]here appropriate, the court on the hearing may render judgment for the opposing party even though he has not filed a cross-motion for summary judgment." In *Melbourne v. Griffith,* 263 Md. 486, 283 A. 2d 363 (1971), the defendant appealed from a jury verdict against him, invoking Maryland Rule 887 that on an appeal from a final judgment "every interlocutory order which has previously been entered in the action shall be open to review by this Court, unless an appeal has theretofore been taken from such interlocutory order and been decided on the merits by this Court." We held that Melbourne's motion for summary judgment should have been granted, thus reversing the judgment of the trial court, and entered a judgment in favor of Melbourne against the plaintiff for costs. That reasoning is applicable here.

We have already referred at some length to the allegations of the declaration. Nevertheless, as we proceed to a consideration of the propriety of the action on the motions for summary judgment we reiterate that we do not here have an action in contract against Maryland National, but a suit in tort against that bank and others.

In support of his motion for summary judgment on the issue of liability Lubow filed: affidavits of Hoffberger and Rodowsky originally filed in *Merchants Mortgage Co. v.*

*Lubow, supra;* an affidavit of Lubow; and depositions of Hoffberger and Rodowsky. From these the trial judge could have gleaned the following relevant facts: Lubow was a former employee of Merchants Mortgage. The business of Merchants Mortgage included the making of loans, principally land loans. It also included the brokering of real estate mortgage loans if the opportunity were presented to obtain a profit or fee from the placement of a loan. After the parting of the ways of Merchants Mortgage and Lubow, Rodowsky's law firm was employed by Merchants Mortgage to represent it against Lubow. There was ongoing litigation. *See, e.g., Merchants Mortgage Co. v. Lubow, supra,* 275 Md. at 223-49. The suspicion existed that Lubow during the period of his employment was a partner in a competing firm, Traders Mortgage Co. (Traders Mortgage). Investigation revealed, among other things, a mortgage in Charles County to Traders Mortgage from a firm that had first applied to Merchants Mortgage. The land records of Montgomery County revealed an agreement to which Lubow and Jack Gordon, known to have been a partner in Traders Mortgage, were parties but from which it could not be clearly determined as to the intent of the agreement or their relationship. Inquiry at the Department of Assessments and Taxation revealed that Traders Mortgage was not a corporation. Finally, in June 1969 Rodowsky requested Hoffberger, an officer and director of Merchants Mortgage, to make inquiry of Maryland National to confirm whether or not Lubow was a partner in Traders Mortgage. The deposition of Hoffberger indicates that the request was solely limited to that fact. Hoffberger contacted an individual at Maryland National whom he believed to be "a vice-president . . . in charge of the Mortgage Department." The inquiry was made by telephone. That individual, who was not called as a witness by any party in this proceeding, subsequently advised Hoffberger by telephone that Lubow was a partner of Traders Mortgage together with Herman Speert. The deposition further indicates that no inquiry was made of the Maryland National official as to the source of the information and that Hoffberger did not ask to obtain

Lubow's financial statement, having "no curiosity about it nor did [he] think that would have been a proper question for [him] to ask." Hoffberger said that such "information [was] available from other sources . . . [,] Dun & Bradstreet, for instance." Hoffberger subsequently advised Rodowsky of the information obtained. Lubow claimed that in the normal course of his business dealings with Maryland National he delivered to the bank his personal financial statement and that his interest in Traders Mortgage was indicated on the face of this financial statement. Nowhere, however, does the source of the information conveyed by Maryland National's officer to Hoffberger appear. It could have come from Maryland National's records, from a lunch table conversation in no way connected with the bank, or from any number of other possible sources. Hollander's connection is that he and Hoffberger were law partners.

In *Carr v. Watkins*, 227 Md. 578, 586, 177 A. 2d 841 (1962), Judge Hammond said for the Court that "in a proper case" Maryland would recognize an action for an unwarranted invasion of privacy. He there traced for this Court the background of the law relative to this tort. In *Household Fin. Corp. v. Bridge*, 252 Md. 531, 250 A. 2d 878 (1969), Judge Finan did likewise. Chief Judge Hammond again reviewed the law in *Harnish v. Herald-Mail Co.*, 264 Md. 326, 336-37, 286 A. 2d 146 (1972), as did Judge Barnes for the Court in *Summit Loans, Inc. v. Pecola*, 265 Md. 43, 288 A. 2d 114 (1972), and *Beane v. McMullen*, 265 Md. 585, 599-603, 291 A. 2d 37 (1972).

In *Household Finance Corp.* Judge Finan pointed out for the Court that when *Carr* was decided the opinion paraphrased Restatement, Torts, § 867 (1939). He quoted from W. Prosser, *The Law of Torts*, Chapter 22, p. 832 (3d ed. 1964). A nearly identical quotation is now found in W. Prosser, *The Law of Torts*, (4th ed. 1971) which states:

"The early cases in all jurisdictions were understandably preoccupied with the question whether the right of privacy existed at all, and gave little or no consideration to what it would amount

to if it did. Today, with something over four hundred cases in the books, some rather definite conclusions are possible. What has emerged is no very simple matter. As it has appeared in the cases thus far decided, it is not one tort, but a complex of four. To date the law of privacy comprises four distinct kinds of invasion of four different interests of the plaintiff, which are tied together by the common name, but otherwise have almost nothing in common except that each represents an interference with the right of the plaintiff 'to be let alone.' " *Id.* at 804.

Judge Finan then said:

"Professor Prosser is now the Reporter for the *Restatement,* covering the sections on invasion of privacy, and in Tentative Draft No. 13, published April 27, 1967, of the *Restatement of the Law, Second, Torts* there is found listed in § 652A the four different *kinds* of invasions of privacy . . . ." *Id.* at 537. (Emphasis in original.)

He then quoted from § 652A as it appeared in Tentative Draft No. 13. Tentative Draft No. 21, published April 5, 1975, has altered the prior text somewhat, stating:

"§ 652A. *General Principle*

(1) One who invades the right of privacy of another is subject to liability to the other if the invasion is unreasonable.

(2) The right of privacy is invaded when there is
  (a) Intrusion upon the seclusion of another, as stated in § 652B; or
  (b) Appropriation of the other's name or likeness . . . ; or
  (c) Publicity given to the other's private life, as stated in § 652D; or
  (d) Publicity which places the other in a false light before the public . . . ." *Id.* at 88.

Accordingly, for liability to exist here that which was done must constitute an "[i]ntrusion upon the seclusion of another" or "[p]ublicity given to the other's private life" since what is involved in no way constitutes "[a]ppropriation of the other's name or likeness" or "[p]ublicity which places the other in a false light before the public . . . ." Insight into this tort is provided by the language of §§ 652B and 652D:

"§ 652B. *Intrusion Upon Seclusion*

One who intentionally intrudes, physically or otherwise, upon the solitude or seclusion of another, or his private affairs or concerns, is subject to liability to the other for unreasonable invasion of his privacy, if the intrusion would be highly offensive to a reasonable person." *Id.* at 89.

"§ 652D. *Publicity Given To Private Life*

One who gives publicity to a matter concerning the private life of another is subject to liability to the other for unreasonable invasion of his privacy, if the matter publicized is of a kind which

(a) Would be highly offensive to a reasonable person, and

(b) Is not of legitimate concern to the public." *Id.* at 89.

Further insight into the general thinking relative to this class of torts is provided by the comment of Dean Prosser, *op. cit.*, concerning appropriation of name. He states:

"It is the plaintiff's name as a symbol of his identity that is involved here, and not as a mere name. Unless there is some tortious use made of it, there is no such thing as an exclusive right to the use of a name; and any one can be given or assume any name he likes. It is only when he makes use of the name to pirate the plaintiff's identity for some advantage of his own, as by impersonation to obtain credit or secret information, or by posing as the plaintiff's wife, or providing a father for a child on a birth certificate, that he becomes liable. It is in

this sense that 'appropriation' must be understood. It is therefore not enough that a name which is the same as the plaintiff's is used in a novel, or the title of a corporation, unless the context or the circumstances indicate that the name is that of the plaintiff. On the other hand, there is no liability for the publication of a picture of his hand, leg or foot, or of his house, his automobile, or his dog, with nothing to indicate whose they are. Nor is there any liability when the plaintiff's character, occupation, and the general outline of his career, with many real incidents in his life, are used as the basis for a figure in a novel who is still clearly a fictional one." *Id.* at 805-06.

Relative to intrusion he states:

"An obviously different form of invasion of privacy consists of intrusion upon the plaintiff's physical solitude or seclusion, as by invading his home or other quarters, or an illegal search of his shopping bag in a store. The principle has, however, been carried beyond such physical intrusion, and extended to eavesdropping upon private conversations by means of wire tapping and microphones; and there are decisions indicating that it is to be applied to peering into the windows of a home, as well as persistent and unwanted telephone calls. The tort has been found in the case of unauthorized prying into the plaintiff's bank account, and the same principle has been used to invalidate a blanket subpoena duces tecum requiring the production of all his books and documents, and an illegal compulsory blood test.

"It is clear, however, that there must be something in the nature of prying or intrusion . . . . It is clear also that the intrusion must be something which would be offensive or objectionable to a reasonable man, and that there is no tort when the landlord stops by on Sunday morning to ask for the

rent. It is clear also that the thing into which there is intrusion or prying must be, and be entitled to be, private." *Id.* at 807-08.

On the subject of disclosure of private facts he states:

"A second group of cases have found a cause of action in publicity, of a highly objectionable kind, given to private information about the plaintiff, even though it is true and no action would lie for defamation. . . . [T]he decision which became the leading case, largely because of its spectacular facts, was Melvin v. Reid, [112 Cal. App. 285, 297 P. 91 (1931)], where an exhibited motion picture revived the past history and disclosed the present identity of a reformed prostitute who, seven years before, had been the defendant in a notorious murder trial. Other decisions have followed, involving publicity given to the plaintiff's debts, to medical pictures of his more intimate anatomy, and to embarassing details of a woman's masculine characteristics and eccentric behavior.

"Some limits of this branch of the right of privacy appear to be fairly well marked out. The disclosure of the private facts must be a public disclosure, and not a private one; there must be, in other words, publicity. . . .

"The facts disclosed to the public must be private facts, and not public ones. The plaintiff cannot complain when an occupation in which he publicly engages is called to public attention, or when publicity is given to matters such as the date of his birth or marriage, or his military service record, which are a matter of public record, and open to public inspection. It seems to be generally agreed that anything visible in a public place can be recorded and given circulation by means of a photograph, to the same extent as by a written description, since this amounts to nothing more

than giving publicity to what is already public and what anyone present would be free to see. The contention that when an individual is thus singled out from the public scene and undue attention is focused upon him, there is an invasion of his private rights, has not been borne out by the decisions. On the other hand, it is clear that when a picture is taken without the plaintiff's consent in a private place, or one already made is stolen, or obtained by bribery or other inducement of breach of trust, the plaintiff's appearance which is thus made public is still a private thing, and there is an invasion of a private right, for which an action will lie.

"The final limitation is that the matter made public must be one which would be offensive and objectionable to a reasonable man of ordinary sensibilities. The law is not for the protection of the hypersensitive, and all of us must, to some reasonable extent, lead lives exposed to the public gaze." *Id.* at 809-11.

Prosser summarized relative to this tort (or these four torts) when he said:

"It is evident that these four forms of invasion of privacy are distinct, and based on different elements. It is the failure to recognize this which has been responsible for much of the apparent confusion in the decisions. Taking them in order — intrusion, disclosure, false light, and appropriation — the first and second require the invasion of something secret, secluded or private pertaining to the plaintiff; the third and fourth do not. The second and third depend upon publicity, while the first does not, nor does the fourth, although it usually involves it. The third requires falsity or fiction; the other three do not. The fourth involves a use for the defendant's advantage, which is not true of the rest." *Id.* at 814.

He said in *Privacy*, 48 Cal. L. Rev. 383 (1960):

> "[T]he facts disclosed to the public must be private facts, and not public ones. Certainly no one can complain when publicity is given to information about him which he himself leaves open to the public eye, such as the appearance of the house in which he lives, or to the business in which he is engaged. Thus it has been held that a public school teacher has no action for a compulsory disclosure of her war work and other outside activities." *Id.* at 394.

The genesis of the concept of invasion of privacy as an actionable tort is regarded by many to be found in S. Warren and L. Brandeis, *The Right of Privacy*, 4 Harv. L. Rev. 193 (1890). They stated:

> "The general object in view is to protect the privacy of private life and to whatever degree and in whatever connection a man's life has ceased to be private, before the publication under consideration has been made, to that extent the protection is to be withdrawn." *Id.* at 215.

Of the right to privacy, R. Pound, *Interests of Personality*, 28 Harv. L. Rev. 343 (1915) said:

> "Another phase of the same interest is the demand which the individual may make that his private personal affairs shall not be laid bare to the world and be discussed by strangers. Such an interest is the basis of the disputed legal right of privacy. . . . Such publicity with respect to private matters of purely personal concern is an injury to personality." *Id.* at 362-63.

Much has been written on the subject, *e.g.*, E. Bloustein, *Privacy As An Aspect of Human Dignity: An Answer to Dean Prosser*, 39 N.Y.U. L. Rev. 962 (1964); Harper and James, *The Law of Torts* (1956) §§ 9.6 and 9.7; S. Hofstadter and George Herowitz, *The Right of Privacy* (1964); Judge

Shirley M. Hufstedler, *The Directions and Misdirections of a Constitutional Right of Privacy*, 28th Annual Benjamin N. Cardozo Lecture (1971); J. Wade, *Developing Trends in the Tort Action for Invasion of the Right of Privacy*, 16 Va. L. Weekly, Dicta Comp. 7 (1964); and A. Westin, *Privacy and Freedom* (1968). Although Bloustein disagrees with Dean Prosser's theory that there are four separate torts involved in invasion of privacy and although some minor differences may otherwise be found between writers, nothing written on the subject disagrees with two thoughts which emerge from what we have previously set forth, that to be actionable in the context of this case the fact disclosed must be one of a private nature, that is, a fact entitled to be kept private, and that the fact not previously have been disclosed to the public. Moreover, in *Beane v. McMullen*, 265 Md. 585, *supra*, Judge Barnes said for the Court:

> "In all of the types of invasions of privacy, except perhaps '(b) Appropriation of the other's name or likeness,' reasonableness under the facts presented is the determining factor." *Id.* at 600-01.

Thus, Lubow's case fails the test. The fact that one is engaged in a partnership carrying on a business can hardly be a private fact. There is no intimation that Lubow's partnership in Traders Mortgage was either a limited partnership or a partnership for an illegal purpose. Neither fact would be a ground for keeping confidential that Lubow was a partner. Code (1975) § 10-102 (a), Corporations and Associations Article (Code (1957) Art. 73, § 2 in effect at the time of this incident) requires "persons desiring to form a limited partnership [to] sign, acknowledge and file for record with the clerk of the court a certificate" with, among other things, "[t]he name and place of residence of each member, general and limited partners being respectively designated . . . ." A contract to form a co-partnership for the purpose of doing a thing forbidden by law is itself illegal. *Spies v. Rosenstock*, 87 Md. 14, 39 A. 268 (1898). It is to be specifically noted that Lubow does not deny the fact that he

was a partner in Traders Mortgage Company.[2] Every time a partner transacts any business on behalf of a partnership, every time he signs a check for the partnership or incurs an obligation on behalf of the partnership, and every time an instrument is placed on record in the land records of any county on behalf of a partnership reflecting the names of the partners, there is public disclosure of the fact that such person is a partner. It would be no less true here.[3] There is no allegation here that Maryland National disclosed such private facts as the bank balance of the partnership or the lines of credit open to the partnership. In short, that which was disclosed here was not a private fact, but a public fact. Accordingly, Maryland National's motion for summary judgment should have been granted and summary judgment also should have been entered in favor of the individual defendants.

> *Judgments reversed and judgment entered in favor of Morton Hollander, Leroy Hoffberger, Lawrence F. Rodowsky, and Maryland National Bank against Ralph Lubow for costs of suit; appellee to pay the costs.*

2. In fact, although *not* available for consideration by the trial judge on motion for summary judgment, at trial Lubow testified, "Any one who was involved in any deals in my loans, which were made by Traders Mortgage, obviously knew that I was involved, yes." He said that he might have told Hoffberger of his involvement with Traders and that he definitely told Charles Hoffberger, president of Merchants Mortgage, of that fact.

3. Indeed, although not before the trial judge on the motion for summary judgment and thus not to be considered as to the propriety of granting such summary judgment, it is a fact that one of the exhibits filed in connection with a motion to strike the partial summary judgment reflects a suit filed in the Circuit Court for Charles County in 1969 against Lubow and others trading as Traders Mortgage in an effort to enjoin foreclosure of a mortgage. Lubow there was specifically referred to as a partner in Traders. Moreover, another exhibit reflects an affidavit by Lubow as a partner in Traders filed in Charles County more than a year and a half prior to the alleged disclosure here.