642 A.2d 219

**The HARTFORD INSURANCE COMPANY**

v.

**MANOR INN OF BETHESDA, INC. et al.**

**No. 28, Sept. Term, 1993.**

Court of Appeals of Maryland.

June 9, 1994.

Jill A. Reid (Donovan, O'Connell & Broderick, all on brief), Silver Spring, for petitioner.

John D. Holler, Mt. Rainier, for respondent, Manor Inn of Bethesda, Inc.

Dawna M. Cobb, Asst. Atty. Gen. (J. Joseph Curran, Jr., Atty. Gen., and C.J. Messerschmidt, Asst. Atty. Gen., all on brief), Baltimore, for State of MD.

Argued Before MURPHY, C.J., and ELDRIDGE, RODOWSKY, McAULIFFE *, CHASANOW, KARWACKI and BELL, JJ.

BELL, Judge.

The issue this case presents involves causation, proximate and superseding. This case arose when an escaped patient from a State-operated hospital for the mentally ill stole a van that had been left unattended, with the keys in the ignition, and, while driving the van, subsequently struck another automobile, causing personal injury and property damage. The injured driver, Robert Wewer ("Wewer"), having been com-

---

* McAuliffe, J., now retired, participated in the hearing and conference of this case while an active member of this Court; after being recalled pursuant to the Constitution Article IV, Section 3A, he also participated in the decision and adoption of this opinion.

pensated for his injuries, pursuant to an existing insurance policy, his carrier, The Hartford Insurance Company, the petitioner, sued the State of Maryland ("the State") and Manor Inn of Bethesda, Inc. ("Manor Inn"), the respondents, for negligence, seeking to recover what it paid out in connection with Wewer's claim. The Circuit Court for Montgomery County entered summary judgment in favor of both defendants and the Court of Special Appeals affirmed. *The Hartford Insurance Company v. Manor Inn of Bethesda, Inc., et al.*, 94 Md.App. 225, 617 A.2d 590 (1992). We granted certiorari to consider the State's duty to warn when the injured person is not a member of an identifiable class and whether, in this case, the negligence of the thief, rather than Manor Inn's negligence, which facilitated the theft, was the proximate cause of the accident.

## I.

Robert Lee Griffin ("Griffin") was involuntarily committed to the Springfield Hospital Center, an inpatient facility located in Sykesville, Carroll County, Maryland and operated by the Department of Health and Mental Hygiene for the treatment of mentally ill individuals. The certification pursuant to which he was admitted indicated that admission was necessary for his protection or for the protection of another. Consequently, Griffin was placed on a high security ward for acutely disturbed patients. He subsequently eloped from Springfield.

Three days after he was discovered missing, Griffin turned up in Bethesda, Maryland. Not being aware that Griffin had eloped and believing that he was homeless and in need of emergency shelter, Montgomery County police officers took Griffin to the Manor Inn. Pursuant to an agreement with the Montgomery County Department of Social Services, he was assigned a room for the night. Springfield was not notified.

On the following morning, an employee of Manor Inn parked a laundry van in front of Griffin's room, leaving it unattended, with the doors unlocked and the keys in the ignition. Griffin was seen entering the van and driving away.

Approximately thirty minutes later, he negligently drove the van into Wewer's car, which was stopped at a stop sign.[1]

Having compensated its insured, but believing that, together, the negligence of the State and of Manor Inn was the proximate cause of the accident, the petitioner filed suit against them seeking to recover what it paid out. As to the State, the petitioner relied on the State's duty to supervise and detain Griffin. The negligence it alleged as to Manor Inn was its employee leaving the van unattended with the keys in the ignition. Manor Inn filed a cross complaint against the State in which it also alleged the State's negligence in failing properly to supervise and detain Griffin.

The State moved for summary judgment against both the petitioner and Manor Inn, both of whom opposed it. Following a hearing, the court granted the motion and, notwithstanding that Manor Inn did not move for summary judgment with respect to the petitioner's claim against it, *sua sponte*, entered summary judgment in favor of Manor Inn.[2] As to the State of Maryland, the court said:

See, that is where I think the difficulty really is. You say it is a duty to identifiable persons as opposed—as you saying, it is a duty to persons who they might reasonably foresee this injury resulting.

That is the causal connection, but that—your client, your insurer was not identifiable until after he stole the car and

---

1. The police report indicated that prior to the accident involving Wewer's car, Griffin was involved in a hit and run accident. That accident is not involved in this appeal.

2. The court explained why it was entering summary judgment in favor of Manor Inn:

 Well, I am actually granting summary judgment in favor of Manor Inn on my own—and in part my purpose for doing this, I acknowledge on the record, is so, that it will make both issues final and appealable, and you can get a decision on each one of them.
 If you are correct, we will come back and have a trial or settlement. If not, then we don't go through the expense of a trial only to find that the Court of Appeals said that it never should have gotten to the jury as a matter of law.

ran into her. So, it would have no way of warning her because they didn't know who it was.

* * * * * *

Even the California case doesn't give liability that it is foreseeable that they know he is going to—that he stab or shoot people, and still no liability even in California they negligently release him, the psychiatrist evidently lets him go.

At this point the only exception they carved out when they have knowledge of specific, identifiable people against whom he may commit these violent acts. They have a duty to warn to those people that look out, here he comes.

And only those that are identifiable, that, that they have the previous knowledge and notice of, and that is still my understanding of what Judge Lowe was saying in the [*Furr v. Spring Grove State Hospital*, 53 Md.App. 474, 454 A.2d 414, *cert. denied*, 296 Md. 60 (1983) ] case.

As to Manor Inn, the court "determin[ed] their negligence was merely passive, and they cannot be held responsible for the actions of Mr. Griffin in negligently running into somebody." It explained further:

The question, Is it foreseeable that if you leave your keys in your car that somebody with a dangerous propensity is going to come and steal the car—I don't see what difference it makes whether it occurs within a reasonable proximity of where the car was parked or it occurs a day later or five days later or one block or several blocks except an argument that may be made that if it is passive negligence, but it is a contributing factor, leaving the keys in, it is foreseeable that an unqualified driver may steal the car.

I don't see it necessarily foreseeable. It sounds more to me like you are dealing in possibilities rather than probabilities or foreseeables. But, let's assume that then if they are saying that once it is reported stolen and they have an opportunity to endeavor to get the car back, the fact that somebody after several days later runs into somebody else,

that is so far remote even from the passive negligence that there is a sensation in the violation of the statute.

I read that case to suggest the passive negligence of leaving the keys in the car is a violation of the statute that does not per se give rise to liability when the injury is caused by an intervening person who comes and negligently operates that motor vehicle.

It wouldn't make any difference whether he—if any of you did that, whether you would have the keys in the cars and that one thief steals it and runs into somebody, they would be negligent.

The car behind it is hot wired and also run in—there is no— what do the keys to the car have to do with the fact that somebody negligently operated other than make it easier for them to steal it.

In affirming, the Court of Special Appeals agreed "that, under the decision of *Furr* [*v. Spring Grove State Hospital*, 53 Md.App. 474, 454 A.2d 414, *cert. denied*, 296 Md. 60 (1983).], [the petitioner's] insured was not a readily identifiable victim and thus the State owed him no duty of care." 94 Md.App. at 241, 617 A.2d at 598. As to Manor Inn, it said:

[W]hen the key is left in the ignition of an unattended vehicle, the taking of that vehicle by an unknown or unauthorized third party who negligently causes damages is an independent and intervening factor, not reasonably foreseeable to the driver, thereby relieving the owner or person in charge of the vehicle from liability for damages caused by a third-party's negligent driving or operation of the vehicle.

*Id.* at 238–39, 617 A.2d at 597. Like the circuit court, the intermediate appellate court did not find it relevant "whether the injuries [were] remote in time or space to the negligent failure of a driver to remove the keys from the ignition." *Id.* at 238, 617 A.2d at 596.

## II.

The petitioner argues that it was error for the trial court to grant the motion for summary judgment in favor of the State

against both Manor Inn and the petitioner and despite Manor Inn's failure to file a motion, to enter, *sua sponte,* summary judgment in favor of Manor Inn against the petitioner. Addressing the State's judgment first, it maintains that the undisputed evidence clearly discloses that the State violated its duty to properly supervise and detain a mentally ill patient involuntarily committed to one of its facilities and that that breach of duty was the proximate cause of Wewer's injuries. On the other hand, the petitioner recognizes that, "[u]nder the current state of the law, in the absence of a specific identifiable plaintiff, the State is exonerated for failing to properly exercise control over Mr. Griffin or any inpatient." Nevertheless, it urges that "[t]he lack of an identifiable victim should not release the State from liability for its blatant failure to carry out its duty." It asks that we establish a standard which would hold the State liable for its acts of negligence.

With respect to Manor Inn, the petitioner argues that it was a jury question whether Manor Inn's violation of a statute caused or contributed to Wewer's injuries. In this case, it is undisputed, the petitioner points out, that Manor Inn's negligence lay in violating Maryland Code (1957, 1992 Repl.Vol.) Transportation Article, § 21–1101, entitled "Unattended Motor Vehicle." That violation having clearly been shown, its causal relationship to the accident is dependent upon the primary purpose of the statute and upon the attendant circumstances. Thus, while violation of a statute is evidence of negligence, the petitioner asserts, when the violation has been shown there remains the factual determination, to be made by the jury, as to whether it was the proximate cause of the injury. It argues, therefore, that summary judgment was inappropriate.

The State rejoins that it does not owe a duty to the public in general; rather it owes a duty only to a specific plaintiff, whose identity was known or knowable, who fell within the risk that the patient posed. In other words, the State argues that the concept of duty must be limited so as to avoid liability for unreasonably remote and unforeseeable consequences. Thus, citing *Lamb v. Hopkins,* 303 Md. 236, 252–253, 492 A.2d

1297, 1305–1306 (1985), it asserts that when no specific plaintiff is foreseeable, it owes no duty to the general public. Furthermore, the State points out, and contends, that it could not have "foreseen that, three days after Griffin eloped from the hospital in Sykesville, he would be found in Bethesda; that county police officers would fail to heed the notice of his elopement issued to law enforcement agencies and would take him to ... [the Manor Inn] motel, rather than return him to the hospital; that a motel employee would park a [laundry] van directly outside Mr. Griffin's motel room and leave it unlocked with the keys in the ignition, and that Griffin would steal the van and drive it negligently, causing an accident." The State's brief at 5.

Like the Court of Special Appeals, Manor Inn argues that it was Griffin's conduct in driving the van negligently, not its negligence in leaving the van unattended, that was the proximate cause of Wewer's injury. Therefore, it asserts, Griffin's negligence constituted an independent intervening cause which was not foreseeable and which relieved it of liability for Wewer's injuries.

## III.

The purpose of the summary judgment procedure is to decide whether there is an issue of fact sufficiently material to be tried, not to try the case or to resolve factual disputes. *Gross v. Sussex, Inc.*, 332 Md. 247, 255, 630 A.2d 1156, 1160 (1993). *See Foy v. Prudential Insurance Company of America et al.*, 316 Md. 418, 422, 559 A.2d 371, 373 (1989); *Coffey v. Derby Steel Company*, 291 Md. 241, 247, 434 A.2d 564, 568 (1981). Thus, the review of the grant of summary judgment involves the determination whether a dispute of material fact exists, *Gross*, 332 Md. at 255, 630 A.2d at 1160; *Beatty v. Trailmaster*, 330 Md. 726, 737, 625 A.2d 1005, 1011 (1992), and "whether the trial court was legally correct." *Heat & Power Corporation v. Air Products & Chemicals, Inc.*, 320 Md. 584, 591, 578 A.2d 1202, 1206 (1990) (citations omitted). Pursuant to Maryland Rule 2–501(e), therefore, when the motion and response show that there is no genuine dispute as to any

material fact and that the moving party is entitled to judgment as a matter of law, the trial court shall enter summary judgment for the moving party forthwith. *Gross,* 332 Md. at 255, 630 A.2d at 1160. The determination whether a genuine dispute of material fact exists and, if not, what the ruling of law should be, requires the reviewing court to resolve all inferences to be drawn from the pleadings, admissions, and affidavits, etc. against the moving party. *Id.* at 256, 630 A.2d at 1160. "In other words, all inferences must be drawn against the moving party when determining whether a factual dispute exists, even when the underlying facts are undisputed." *Id.*

There are cases of this Court that hold that a trial court may enter summary judgment on its own motion. *Hollander v. Lubow,* 277 Md. 47, 51, 351 A.2d 421, 423 (1976) (summary judgment can be entered in favor of all the defendants even when a motion was made by only one of them); *Preissman v. Harmatz,* 264 Md. 715, 721, 288 A.2d 180, 184 (1972) ("a court may enter summary judgment on its own motion when there is no genuine dispute as to a material fact"); *Myers v. Montgomery Ward & Company,* 253 Md. 282, 290, 252 A.2d 855, 860 (1969); *Hunt v. Montgomery County,* 248 Md. 403, 411, 414, 237 A.2d 35, 39, 40 (1968); *Fletcher v. Flournoy,* 198 Md. 53, 57, 81 A.2d 232, 233 (1951). Those cases were decided prior to this Court's adoption of Rule 2–501. That Rule, adopted April 6, 1984, effective July 1, 1984, provides that "[a]ny party may file at any time a motion for summary judgment," Maryland Rule 2–501(a), and that "the court shall enter judgment in favor of or against *the moving party* if the motion and response show that there is no genuine dispute as to any material fact and the party in whose favor judgment is entered is entitled to judgment as a matter of law." Maryland Rule 2–501(e) (emphasis added). The predecessor to Rule 2–501, Rule 610 permitted the trial court to render summary judgment for the opposing party "[w]here appropriate ... even though he has not filed a cross-motion for summary judgment." Maryland Rule 610 d 1. It was to this provision that the cases referred as support for the proposition that a

trial court may enter summary judgment *sua sponte. See Lubow, supra,* 277 Md. at 51, 351 A.2d at 423; *Myers, supra* 253 Md. at 290, 252 A.2d at 860; *Flournoy,* 198 Md. at 57, 81 A.2d at 233.

■ Rule 2–501, although it requires the filing of a motion, *see* section (a), by requiring the entry of judgment *in favor of or against* the *moving* party, retains the requirement of Rule 610 d 1. Thus, it is clear that it does not contemplate, as Rule 610 d 1 did not contemplate, a court's acting entirely on its own motion, that is to say, where none of the parties has moved for summary judgment. That interpretation is consistent with what was intended when the Rules Committee proposed, and this Court adopted, Rule 2–501.

■ As proposed, reorganization draft rule 2–608(a), which was to become Rule 2–501(e), provided, as relevant:

(a) Entry of Judgment

Upon motion of a party, the court shall enter judgment in favor of the party if the pleadings, depositions, answers to interrogatories, admissions, and affidavits show that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law.

*See* Minutes, Standing Committee on Rules of Practice and Procedure, October 16–17, 1981 at 47. The purpose of that sentence was stated clearly in the draft explanatory note:

Section (a) sets forth the standard for the granting of a motion for summary judgment and makes it clear that a motion is in fact necessary. Consequently, a court may not grant summary judgment upon its own initiative.

*Id.* at 48. The subcommittee was specifically asked and agreed to consider whether the court should be allowed to act on its own motion and when the rule was next presented, it had been amended to also permit entry of judgment *against* the moving party. It was approved in that form and sent to the style committee. *See Minutes,* November 20–21, 1982 at 17–19. The only changes subsequently made to the draft rule

were style changes, *i.e.* leaving the motion requirement in section (a) and treating the entry of judgment in section (e).

■ The trial court erred in granting summary judgment in favor of Manor Inn against the petitioner *sua sponte*. As we have seen, the State moved for summary judgment against both the petitioner and Manor Inn. That motion related, however, only to the petitioner's complaint against the State, Manor Inn being involved only because of its cross-claim; it had nothing to do with and, hence, was unrelated to the petitioner's claim against Manor Inn. Indeed, the two claims proceeded on different theories of liability. Therefore, as to the State's motion for summary judgment, judgment could have been entered in favor of both the petitioner and Manor Inn, and against the State, even though neither had filed cross-motions for summary judgment. On the other hand, judgment either for or, against Manor Inn on the petitioner's claim against Manor Inn could not properly be entered, neither Manor Inn nor the petitioner having sought summary judgment as to that claim. Nevertheless, we shall decide the issue as to Manor Inn's liability "to avoid the expense and delay of another appeal." Maryland Rule 8–131(a). There being nothing in the record to indicate that the absence of any motion for summary judgment by Manor Inn was a tactical decision by it, were we to reverse and remand, it is likely that Manor Inn would simply file a motion for summary judgment against the petitioner and a second appeal presenting the same issue between those parties would be almost inevitable.

## IV.

■ "Negligence ... is conduct which falls below the standard [of care] established by law for the protection of others against [the] unreasonable risk [of harm]." William L. Prosser, *Handbook of The Law of Torts* § 43, at 250 (4th ed. 1971). The elements of a negligence action are well settled in this State:

First, the defendant must be under a duty to protect the plaintiff from injury. Second, the defendant must fail to

discharge that duty. Third, the plaintiff must suffer actual loss or injury proximately resulting from that failure.

*Lamb,* 303 Md. at 241, 492 A.2d at 1300. *See Scott v. Watson,* 278 Md. 160, 165, 359 A.2d 548, 552 (1976); *Peroti v. Williams,* 258 Md. 663, 669, 267 A.2d 114, 118 (1970); *Myers v. Montgomery,* 253 Md. at 291, 252 A.2d at 861. The first element—duty—the subject of this portion of the opinion, "has been defined as 'an obligation, to which the law will give recognition and effect, to conform to a particular standard of conduct toward another;' " it "is not sacrosanct in itself, but is only an expression of the sum total of those considerations of policy which lead the law to say that the particular plaintiff is entitled to protection." *Ashburn v. Anne Arundel County,* 306 Md. 617, 627, 510 A.2d 1078, 1083 (1986), quoting W. Page Keaton, *Prosser and Keaton on The Law of Torts,* § 53, at 164 (5th ed. 1984). As to it, we have observed:

> [T]here can be no negligence where there is no duty that is due; for negligence is the breach of some duty that one person owes to another. It is consequently relative and can have no existence apart from some duty expressly or impliedly imposed. In every instance before negligence can be predicated of a given act, back of the act must be sought and found a duty to the individual complaining, the observance of which duty would have averted or avoided the injury.... As the duty owed varies with circumstances and with the relation to each other of the individuals concerned, so the alleged negligence varies, and the act complained of never amounts to negligence in law or in fact; if there has been no breach of duty.

*West Va. Central R. Co. v. Fuller,* 96 Md. 652, 666, 54 A. 669, 671 (1903). We have also recognized that the concept of duty as owing to all persons the exercise of reasonable care to protect them from harm has to be limited if liability for unreasonably remote consequences are to be avoided. *Henley v. Prince George's County,* 305 Md. 320, 333, 503 A.2d 1333, 1340 (1986). One of the mechanisms that has been utilized to accomplish that limitation is, and has been, application of the variable, foreseeability, to the determination of whether a duty

exists. *Ashburn,* 306 Md. at 627, 510 A.2d at 1083; *Henley,* 305 Md. at 333–34, 503 A.2d at 1340. That "involves a prospective consideration of the facts existing at the time of the negligent conduct." *Henley,* 305 Md. at 336, 503 A.2d at 1341. In *Henley,* we noted that "at least since 1928 when [Chief] Judge Cardoza wrote *Palsgraf v. Long Island R. Co.,* 248 N.Y. 339, 162 N.E. 99 (1928), courts have given further effect to the social policy of limitation of liability for remote consequences by narrowing the concept of duty to embrace only those persons or classes of persons to whom harm of some type might reasonably have been foreseen as a result of the particular tortious conduct." *Id.* 305 Md. at 333–34, 503 A.2d at 1340. On the other hand, " 'foreseeability' must not be confused with 'duty'. The fact that a result may be foreseeable does not itself impose a duty in negligence terms." *Ashburn,* 306 Md. at 628, 510 A.2d at 1083.

In *Palsgraf* a passenger who was rushing to catch the defendant's train, jumped aboard the moving train and, when he appeared to lose his balance, was assisted by the defendant's employees. Their assistance caused the small package he was carrying to drop onto the tracks. Because it contained fireworks, the package exploded, causing some scales on the platform, many feet away, to fall upon and injure the plaintiff. 162 N.E. at 99. Noting that the appearance of the package gave no clue as to its contents, the court held that the consequences to the plaintiff of the defendant railroad's conduct even if it were tortious as to the boarding passenger, were unreasonably remote; hence, she could not recover. The Court reasoned that it was unforeseeable that the act of assisting a boarding passenger who was carrying a package would result in injury to another passenger many feet away when the boarding passenger inadvertently dropped the package. *Id.* 248 N.Y. at 343–344, 162 N.E. 99. "The risk reasonably to be perceived defines the duty to be obeyed, and risk imports relation; it is risk to another or to others within the range of apprehension," it opined. *Id.* 162 N.E. at 100.

The duty that the State is alleged to have breached is not one that flows directly from the State to the petitioner;

rather, it involves the State's obligation with respect to the conduct of a third person. The general rule is "that there is no duty to control a third person's conduct so as to prevent personal harm to another, unless a 'special relationship' exists either between the actor and the third person or between the actor and the person injured," *Ashburn,* 306 Md. at 628, 510 A.2d at 1083. *See Lamb v. Hopkins,* 303 Md. at 242–44, 492 A.2d at 1300–01; *Scott v. Watson,* 278 Md. at 166, 359 A.2d at 552 (1976); Restatement (Second) of Torts § 315 (1965).[3] Although section 315 of the Restatement states the general rule, section 319 addresses a particular exception to that general rule. Entitled "Duty Of Those In Charge Of Persons Having Dangerous Propensities," it provides:

> One who takes charge of a third person whom he knows or should know to be likely to cause bodily harm to others if not controlled is under a duty to exercise reasonable care to control the third person to prevent him from doing such harm.

We expressly adopted this section of the Restatement as the law of Maryland in *Lamb,* 303 Md. at 245, 492 A.2d at 1302. In so doing, we commented that it applied to two situations: when the actor has charge of one or more of a class of persons to whom a tendency to act injuriously is normal and where the actor has charge of a third person who has a peculiar tendency to act injuriously, of which the actor has personal knowledge or experience. *Id.* at 243, 492 A.2d at 1301. Moreover, we recognized that section 319 is peculiarly applicable to custodial situations. *Id.* at 244, 492 A.2d at 1301, citing Prosser & Keaton, *supra,* § 56, & n. 16 at 383. It is on the premise that a "special relationship" existed between Griffin and the State that the petitioner's suit is based.

---

**3.** Restatement (Second) of Torts § 315 (1965) provides:

There is no duty so to control the conduct of a third person as to prevent him from causing physical harm to another unless

(a) a special relation exists between the actor and the third person which imposes a duty upon the actor to control the third person's conduct, or

(b) a special relation exists between the actor and the other which gives to the other a right to protection.

Griffin, the negligent actor, was in the State's custody, having been involuntarily committed upon certification of two doctors that he was a danger to himself or to others. Indeed, the State concedes that a special relationship existed between it and Griffin while he was in its custody as a patient at Springfield State Hospital Center. It concedes, further, that, at that time, it had a general duty to prevent Griffin from causing physical harm to others. Therefore, it would appear that the State fell within the provisions of section 319. But that is not the issue before the Court. What was the State's duty when Griffin eloped? Did the petitioner's insured fall within a class of individuals for whose protection the duty of control existed?

The record is unclear as to the nature or cause of Griffin's dangerousness. That is an important ingredient in determining whether, and, if so, the extent to which, the State owed a duty to Wewer. It does not appear, however, that Griffin's dangerousness involved eloping from State mental institutions and stealing automobiles, which he then crashed into other automobiles. Moreover, it could not be foreseen that Griffin, having eloped, would go to Bethesda, steal a van, and drive it negligently, thus causing an accident. "The risk reasonably to be perceived" *Palsgraf*, 162 N.E at 100, does not encompass every conceivable possibility and danger. Therefore, viewing the matter prospectively in light of the facts existing at the time of the State's negligent conduct, *i.e.*, its failure to control or detain Griffin, see *Henley*, 305 Md. at 336, 503 A.2d at 1341, it would be to hold the State liable for unreasonably remote consequences to hold it responsible for Griffin's negligence.[4]

The State also argues that, in any event, even where the custodian fails to control or detain an unreasonably dangerous

---

4. To be sure, there are cases which hold that a violation of the special duty exposes the custodian to liability to the public at large, *see Perreira v. Colorado*, 768 P.2d 1198, 1201 (Colo.1989); *Naidu v. Laird*, 539 A.2d 1064, 1073 (Del.1988); *Estate of Johnson v. The Village of Libertyville*, 146 Ill.App.3d 834, 100 Ill.Dec. 154, 158, 496 N.E.2d 1219, 1223 (1986); *Durflinger v. Artiles*, 234 Kan. 484, 673 P.2d 86, 94, 99 (1983).

person who is in its custody, the custodian owes a duty only to persons within the class to whom the escaped person's dangerous propensity poses a risk and that duty is to warn those members of the class of whom the custodian is aware or should have been aware. *See Tarasoff v. Regents of the University of California,* 17 Cal.3d 425, 131 Cal.Rptr. 14, 551 P.2d 334 (1976) (psychotherapists have duty to warn victim, of whom he or she is aware, of the threats that his or her patient has made against him or her); *Thompson v. County of Alameda,* 27 Cal.3d 741, 167 Cal.Rptr. 70, 614 P.2d 728 (1980) (unless the victim was the foreseeable or readily identifiable target of the threats by a juvenile delinquent to take the life of a child in the neighborhood, county under no duty to warn prior to releasing the juvenile delinquent from custody); *Ajirogi v. State,* 59 Haw. 515, 583 P.2d 980 (1978) (risk of negligent operation of a stolen vehicle was not foreseeable and therefore a duty of care on the part of State mental hospital did not exist); *Furr v. Spring Grove State Hospital,* 53 Md.App. 474, 454 A.2d 414, *cert. denied,* 296 Md. 60 (1983).

*Furr* is the only case in which an appellate court of this State has been presented with, and decided, the issue in this case. In *Furr,* the third party was Arthur Goode, a sexual deviate who had been voluntarily admitted to Spring Grove State Hospital upon recommendation of one of the defendant psychiatrists. The admission followed Goode's having been sentenced to a suspended sentence for a charge relating to the commission of unnatural sex acts on little boys. Goode absconded from Spring Grove and, eleven days later, murdered a young boy.

The intermediate appellate court rejected the argument that the duty of the psychiatrists in that case ran to the public at

---

Other cases hold that, even without knowledge of the third person's dangerous propensities, a psychiatrist owes a duty to that class of persons reasonably within the ambit of the risk. *See Lipari v. Sears, Roebuck & Company,* 497 F.Supp. 185, 194 (D.Neb.1980); *Hamman v. County of Maricopa,* 161 Ariz. 58, 775 P.2d 1122, 1128 (1989); *Leonard v. State,* 491 N.W.2d 508 (Iowa 1992); *Petersen v. State,* 100 Wash.2d 421, 671 P.2d 230, 237 (1983).

large. Instead, "noting the narrowing of the object of one's duty from all the world at old common law, to a 'foreseeable plaintiff,' " citing *Palsgraf,* 248 N.Y. 339, 162 N.E. 99, and relying on section 315 of the Restatement (Second) of Torts, adopted in *Scott v. Watson, supra,* which it interpreted as holding "that as a general rule a private person is under no special duty to protect another from criminal acts by a third person, in the absence of a statute, or special relationship," 53 Md.App. at 482, 454 A.2d at 418, the *Furr* court held that the psychiatrist's duty does not extend to the victim unless the victim is readily identifiable. *Id.* at 489, 454 A.2d at 421. In reaching this holding, the Court of Special Appeals commented on *Tarasoff* and *Thompson,* which explicated *Tarasoff.* In *Tarasoff,* the victim was the known, and, therefore, specifically identifiable and a foreseeable object of the patient's threat, thus the duty found in *Tarasoff* applied "only when the doctor knows the identity of the victim who has been threatened." *Furr,* 53 Md.App. at 487, 454 A.2d at 420. Explicating *Tarasoff, Thompson* made clear that "[a]lthough the intended victim as a precondition to liability need not be specifically named, he must be 'readily identifiable.' " 167 Cal.Rptr. at 76, 614 P.2d at 734. The court concluded that the principle enunciated in *Tarasoff* "coalesces with § 315 of the Restatement (Second) of Torts." *Furr,* 53 Md.App. at 488, 454 A.2d at 421. *See also McIntosh v. Milano,* 168 N.J.Super. 466, 403 A.2d 500, 511–12 (1979).

Furthermore, recognizing an inconsistency between the negligence the plaintiffs alleged and the duty they would impose, the court observed:

> The negligence they charge of misdiagnosis [and recommendation] and failure to readmit Goode does not relate to any known dangerous propensity of Goode. Assuming that appellees should have known of his dangerous propensities and restrained Goode, whom should they have warned that they had failed to do so?

*Furr,* 53 Md.App. at 488, 454 A.2d at 421.

We commented on a similar argument in *Henley* and seemed to reject it. 305 Md. at 334–36, 503 A.2d at 1340–

1341. We recognized that applying foreseeability analysis to the determination of "the existence of a duty has in some cases spawned the belief that a duty will be found only in favor of 'identifiable plaintiffs,' *i.e.*, those within a foreseeable zone of danger whose identities are known in advance." *Id.* at 334, 503 A.2d at 1340. We have cautioned, however, that, while relevant to the duty to warn, it "is not necessarily relevant to the existence of other duties that might arise." *Id.* at 336, 503 A.2d at 1341. Moreover, we acknowledged that the question whether a victim feasibly can be identified is different from the question whether that victim was owed a duty. *Id.* at 335 n. 4, 503 A.2d at 1341 n. 4, discussing Justice Tobriner's dissenting opinion in *Thompson v. County of Alameda*, 27 Cal.3d. 741, 167 Cal.Rptr. 70, 80, 614 P.2d 728, 738 (1980). We then pointed out, in that case, "[t]hat such persons could not be identified in advance does not mean that they are not included in the class." *Id.* 305 Md. at 336, 503 A.2d at 1341. That observation is equally applicable here, except that, here, the nature of the risk Griffin presented is not itself very clear. Accordingly, we need not further address whether summary judgment was correctly granted on the State's alternate ground.

## V.

To be liable for the injuries to the petitioner's insured, it must be proved that Manor Inn's negligence was a proximate cause of the accident. This means that the petitioner must establish that the negligence of Manor Inn's employee in leaving the van unattended with the keys in the ignition was a proximate cause of the accident. If, as Manor Inn argues, the actions of Griffin constituted an intervening, superseding act, then Griffin's conduct would be *the* proximate cause of the accident, thus relieving Manor Inn of any responsibility. We start first with the determination whether Manor Inn was negligent.

Maryland Code (1957, 1992 Repl.Vol.) § 21–1101 of the Transportation Article, provides, in pertinent part:

(a) *Duty of driver upon leaving unattended vehicle.*—Except as provided in subsection (c) of this section, a person driving or otherwise in charge of a motor vehicle may not leave it unattended until the engine is stopped, the ignition locked, the key removed, and the brake effectively set.[5]

There is no dispute as to what Manor Inn's employee did: he left the keys in the ignition, the doors to the van unlocked, and moved far enough away from the van as to be unable to prevent its theft. We have previously held that leaving the key in the ignition of an unattended vehicle is a violation of the statute. *See Khoyan v. Turner,* 255 Md. 144, 147, 257 A.2d 219, 220 (1969). We have also said that a vehicle is effectively unattended when its operator is far enough away from it so as not to be able to prevent the occurrence at which the statute is directed. *See Hochschild, Kohn & Company v. Canoles,* 193 Md. 276, 193, 66 A.2d 780, 783 (1949); *see also Lustbader v. Traders Delivery Company,* 193 Md. 433, 67 A.2d 237, 239–240 (1949); *Collins v. Luper,* 12 Md.App. 109, 113, 277 A.2d 445, *cert. denied,* 263 Md. 716 (1971).

 "The violation of a statute may furnish evidence of negligence." *Atlantic Mutual v. Kenney,* 323 Md. 116, 124, 591 A.2d 507, 510 (1991); *Aravanis v. Eisenberg,* 237 Md. 242, 259–60, 206 A.2d 148, 158 (1965). It may be actionable when it causes harm to a person within the class of persons the statute seeks to protect and the harm is the kind that the statute is designed to prevent. *See id.; Owens v. Simon,* 245 Md. 404, 409, 226 A.2d 548, 551 (1967); *Prosser and Keaton, supra,* § 36 at 224–27. Although the violation of a statute is evidence of negligence, it "is not per se enough to make a violator thereof liable for damages." *Liberto v. Holfeldt,* 221 Md. 62, 65, 155 A.2d 698, 700 (1959). For that to occur, the plaintiff must show that the violation was a proximate cause of his or her injury, *Erie Insurance Company v. Chops,* 322 Md. 79, 84, 585 A.2d 232, 234 (1991), that "had not been interrupted by a

---

5. In this case, the van was parked on private property. The issue of the statute's applicability to such a situation is not here at issue.

break in the chain of causation." *Holfeldt,* 221 Md. at 65, 155 A.2d at 700.

 We have, on several occasions, commented on the purpose of the unattended motor vehicle statute. We may discern, from those occasions, that the purpose of the statute varies depending upon the nature of the violation. In *Canoles,* 193 Md. at 283, 66 A.2d at 783, in which an oil truck left standing, unattended, with its motor running, ran down a hill striking and permanently injuring the plaintiff, we stated its purpose as being "either to prevent some unauthorized person from starting a car or to prevent the start of the car by gravity. In either case the object was the protection of the public." In *Holfeldt,* the plaintiff was injured when struck by the defendant's car, which was driven by a thief, whose access to it was facilitated because the defendant left the keys in the ignition. We observed: "The duty to the public created by the statute was primarily to protect against a theft of or tampering with a motor vehicle and to prevent them from moving under their own momentum should the brakes fail." 221 Md. at 66, 155 A.2d at 701. *See also Owens v. Simon,* 245 Md. at 409, 226 A.2d at 551. For our purpose, *Holfeldt* is dispositive.

> Proximate cause ultimately involves a conclusion that someone will be held legally responsible for the consequences of an act or omission. This determination is subject to considerations of fairness or social policy as well as mere causation. Thus, although an injury might not have occurred 'but for' an antecedent act of the defendant, liability may not be imposed if for example the negligence of one person is merely passive and potential, while the negligence of another is the moving and effective cause of the injury.... [O]r if the injury is so remote in time and space from defendant's original negligence and another's negligence intervenes.

*Peterson v. Underwood,* 258 Md. 9, 16, 264 A.2d 851, 855 (1970) (citations omitted). Stated differently, to be a proximate cause of an injury, "the negligence must be 1) a cause in fact, and 2) a legally cognizable cause." *Atlantic Mutual v.*

*Kenney,* 323 Md. at 127, 591 A.2d at 512. When more than one act of negligence arguably could be responsible for the injury, the question that is presented is whether the second in point of time superseded the first, *i.e.,* did that act intervene and supersede the original act of negligence, thus terminating its role in the causation chain? That is the question presented by this case. Admittedly, the employee of Manor Inn, hence, Manor Inn, was negligent in leaving the keys in the van; however, so too was Griffin negligent in the manner in which he drove the van after stealing it. Query, did Griffin's negligent driving of the van break the chain of causation flowing from Manor Inn's negligence?

We recently addressed the issue of intervening, superseding cause in *Kenney.* In that case, the defendant parked a tractor trailer in a no parking area near an intersection in such a way as to significantly obstruct the vision of drivers at that intersection. We rejected the defendant's argument that the proximate cause of the accident, a collision between a car exiting the shopping center and another proceeding on the roadway running along side the shopping center, was the negligence of the exiting driver. In so doing, we reviewed principles applicable to intervening, superseding cause. Noting the importance of foreseeability in determining the existence of proximate cause, we cited sections 435 [6] and 447 [7] of the Restatement (Second) of Torts. We illustrated the

---

6. Section 435 of the Restatement (Second) of Torts provides:
 Foreseeability of Harm or Manner of Its Occurrence
 (1) If the actor's conduct is a substantial factor in bringing about harm to another, the fact that the actor neither foresaw nor should have foreseen the extent of the harm or the manner in which it occurred does not prevent him from being liable.
 (2) The actor's conduct may be held not to be a legal cause of harm to another where after the event and looking back from the harm to the actor's negligent conduct, it appears to the court highly extraordinary that it should have brought about the harm.

7. Section 447 of the Restatement (Second) of Torts provides:
 Negligence of Intervening Acts
 The fact that an intervening act of a third person is negligent in itself or is done in a negligent manner does not make it a superseding

principles enunciated in those sections by discussing certain of our cases.

In *Penn, Steel Company v. Wilkinson*, 107 Md. 574, 69 A. 412 (1908), a defendant who allowed a rope to hang in a loop very low across a public street was negligent and that negligence was held to be the proximate, though not the immediate cause, of the plaintiff's injury, which was caused when the plaintiff's horse was frightened when a stranger moved the rope. We explained:

> "[T]he defendant is liable where the intervening causes, acts, or conditions were set in motion by his earlier negligence, or naturally induced by such wrongful act, or omission, or even it is generally held, if the intervening acts or conditions were of a nature, the happening of which was reasonably to have been anticipated, though they have been acts of the plaintiff himself."

*Id.* at 581, 69 A. at 414–415, quoting 21 Am. & Eng.Ency. 490. Similarly, we held, in *Lashley v. Dawson*, 162 Md. 549, 160 A. 738 (1932), that the defendant's negligence was the proximate cause of the injuries to the plaintiff, a pedestrian, which were caused when he was struck by a car on the roadway. In that case, the defendant's negligence consisted of its driver failing to illuminate the interior of its bus, which constituted a complete obstruction of traffic on the roadway at night, when the bus's road lights did not reveal its presence. *Id.* at 559, 601, 160 A. at 739–742. This was true despite the fact that the driver of the other vehicle involved in the accident may also have been negligently operating that vehicle. We pointed out:

---

cause of harm to another which the actor's negligent conduct is a substantial factor in bringing about, if

(a) the actor at the time of his negligent conduct should have realized that the third person might so act, or

(b) a reasonable person knowing the situation existing when the act of the third person was done would not regard it as highly extraordinary that the third person had so acted, or

(c) the intervening act is a normal consequence of a situation created by the actor's conduct and the manner in which it is done is not extraordinarily negligent.

The mere fact that the original act of the appellants in obstructing the highway would not in itself have injured the appellee is not a defense to his action against them, if it appears that it was known or should have been known to appellants' driver that failure to warn approaching traffic of the obstruction might naturally and probably result in an accident which would or might injure others lawfully in the use of the highway.

*Id.* at 561–62, 160 A. at 743. *See also Bloom v. Good Humor Ice Cream Company,* 179 Md. 384, 389, 18 A.2d 592, 594 (1941), in which, assuming that the defendant, the driver of the ice cream truck, was negligent when he invited a minor to cross the street to purchase his ice cream, we rejected the plaintiff's argument that the defendant's negligence was the proximate cause of the plaintiff's injuries where the accident did not occur as the plaintiff was crossing to purchase ice cream. It occurred only after he had left the truck and passed behind it on his return trip, and when the striking automobile appeared suddenly. The Court explained:

[The proximate cause] must be the natural and probable consequence of the negligent act, unbroken by any intervening agency, and where the negligence of any one person is merely passive, and potential, while the negligence of another is the moving and effective cause of the injury, the latter is the proximate cause and fixes the liability.

*Bloom,* 179 Md. at 387, 18 A.2d at 593–594. *See also Scott v. Watson,* 278 Md. at 173, 359 A.2d at 556 (1976), quoting *Little v. Woodall,* 244 Md. 620, 626, 224 A.2d 852, 855 (1966) ("if the situation wrongfully created by the defendant increased the risk of damage through the operation of another reasonably foreseeable force, the defendant is liable for the ensuing loss."); *Owens v. Simon,* 245 Md. at 409, 226 A.2d at 552 (negligence of driver in causing an intersection accident is not the proximate cause of the death of a police officer who was killed when that driver attempted to move his car in response to the officer's instructions and the car malfunctioned).

In *Kenny,* we stated the test to be:

If the negligent acts of two or more persons, all being culpable and responsible in law for their acts, do not concur in point of time, and the negligence of one only exposes the injured person to risk of injury in case the other should also be negligent, the liability of the person first in fault will depend upon the question whether the negligent act of the other was one which a man of ordinary experience and sagacity, acquainted with all the circumstances, could reasonably anticipate or not. If such a person could have anticipated that the intervening act of negligence might, in a natural and ordinary sequence, follow the original act of negligence, the person first in fault is not released from liability by reason of the intervening negligence of another.

323 Md. at 131, 591 A.2d at 514, quoting *State v. Hecht Company*, 165 Md. 415, 422, 169 A. 311, 313 (1933).

Leaving the keys in the ignition of a motor vehicle increases significantly the chances of that vehicle being stolen. Thus, viewing the total facts of the case *sub judice*, it is patent that it was reasonably foreseeable that, by leaving the keys in the ignition, a thief would take the van. In the case *sub judice*, but for the negligence of Manor Inn, Griffin would not have taken the van. It is not so clear, however, that the thief would drive negligently, and even more unclear that, in doing so, he or she would injure the plaintiff. Consequently, while the negligence of Manor Inn clearly was the proximate cause of the theft of the van, it does not follow that that causal relationship continued from the moment of the theft to the moment of the impact between the van and Wewer's car. Griffin's conduct in taking the van was not "highly extraordinary"; indeed, it was highly predictable. On the other hand, the manner in which he drove the van, and its consequences, were "highly extraordinary." The Court of Special Appeals correctly affirmed the judgment of the circuit court.

This is consistent with our holding in *Holfeldt*. In that case, we held, alternatively, that leaving the keys in the ignition of an automobile "was not the proximate cause of the injury both on the basis that it was not foreseeable that the thief would be involved in an accident five days later and that the negligence

of the thief was an independent intervening cause which was in fact the proximate cause of the accident." 221 Md. at 67, 155 A.2d at 701. The latter basis for the decision is consistent with decisions reached by courts in other jurisdictions.[8]

*JUDGMENT AFFIRMED. COSTS IN THIS COURT AND IN THE COURT OF SPECIAL APPEALS TO BE PAID BY THE PETITIONER.*

---

8. *See e.g. Richards v. Stanley,* 43 Cal.2d 60, 271 P.2d 23, 29 (1954); *Price v. Big Creek of Ga.,* 191 Ga.App. 534, 382 S.E.2d 356, 357 (1989); *Smith v. Shaffer,* 395 N.W.2d 853, 856 (Iowa 1986); *Thomas v. Eppinga,* 179 Mich.App. 366, 445 N.W.2d 234, 238 (1989); *Anderson v. Theisen,* 231 Minn. 369, 43 N.W.2d 272, 274 (1950); *Elliott v. Mallory Electric Corp.,* 93 Nev. 580, 571 P.2d 397, 398–399 (1977); *Merchants Delivery Service, Inc. v. Joe Esco Tire Co.,* 533 P.2d 601, 602–604 (Okla.1975); *Rollins v. Petersen,* 813 P.2d 1156, 1164 (Utah 1991); *Lichter v. Fritsch,* 77 Wis.2d 178, 252 N.W.2d 360, 362 (1977); *Meihost v. Meihost,* 29 Wis.2d 537, 139 N.W.2d 116, 120 (1966). *See also Ajirogi v. State,* 59 Haw. 515, 583 P.2d 980, 988 (1978). *But see White v. United States,* 780 F.2d 97, 107 (D.C.Cir.1986).