# KELLY TRINA KLIPA et al. *v.* BOARD OF EDUCATION OF ANNE ARUNDEL COUNTY et al.

[No. 1296, September Term, 1982.]

*Decided May 10, 1983.*

The cause was argued before MASON, LISS and GETTY, JJ.

*Charles W. Ayres, Jr.,* for appellants.

*John H. Bolgiano,* with whom were *Smith, Somerville & Case* on the brief, for appellees.

LISS, J., delivered the opinion of the Court.

This case arises out of a declaration filed in the Circuit Court for Anne Arundel County by the appellants herein, the parents and next friends of Kelly Trina Klipa, against the Board of Education of Anne Arundel County, and Hermais Rogers, administrator of Andover Phoenix Center Program, the appellees herein.

The minor plaintiff was, in the fall of 1980, a student in the Anne Arundel County school system. Because of various difficulties in the regular school program she had been assigned in the ninth grade to a program designated as the Phoenix Center Program, operated by the Anne Arundel school system at a facility located in Andover, Maryland. During the time she was a student in the Anne Arundel school system she had various psychological reports and recommendations made a part of her school records. In the fall of 1980, when Kelly reached 16 years of age, she withdrew from the Anne Arundel school system. Shortly thereafter, as a result of a family conference, it was agreed that Kelly was to go to live with an older, married sister located in New York State. It was also agreed that Kelly was to enroll in the Sauquoit Valley Central School in New York State. In order to enroll in this school it was necessary that Kelly submit to the new school the records of the Anne Arundel County school system concerning her academic background.

Kelly's parents communicated with a Mrs. Paumier, a psychologist employed by the Anne Arundel County school system, and advised Mrs. Paumier that they wanted only Kelly's academic records sent to the new school and requested that the psychological and behavioral records be withheld. Kelly's mother was referred to Mrs. Rogers, one of the defen-

dants in this case, who agreed to submit only the academic records to the new school. Both of Kelly's parents went to the school and signed a document designated as a "Consent for Record Release" on a form prepared by the appellees herein. The document purported to give the Anne Arundel County Public Schools System permission to release all of Kelly's records concerning personal and family information, attendance data, grades, standardized tests, health, vision and hearing, and school activity. The permission specifically did not include physical, behavior, or psychological referrals.

Kelly's parents contended that Mrs. Rogers agreed to send only those records authorized to be sent. It is conceded that other employees of the Anne Arundel School System inadvertently mailed Kelly's entire school record, including the psychological reports, to the principal of the Sauquoit Valley Central School. The appellants further contended that as a result of the release of Kelly's psychological reports and referrals to the school to which she was transferred, she became known as a person with psychological problems. They stated that the information was disseminated to the principal of the school, teachers, guidance counsellors, social workers and other students, and that as a direct result of the unlawful actions of the Anne Arundel school authorities she sustained an unwarranted invasion of her privacy. As a result of this invasion of her privacy, Kelly allegedly was caused to suffer public scorn and ridicule, the contempt of her fellow students, embarrassment, humiliation, and severe mental distress. Appellants demanded compensatory and punitive damages.

The case came to trial before a jury. At trial, Kelly testified that when she first transferred to the school in New York that she had no difficulty in making friends; however, after she had been at the school for several weeks, she noticed a change in the attitude of the children toward her. She contended this caused her to withdraw from the students and that she became severely depressed. In the course of her direct examination counsel attempted to elicit

from her what several of her schoolmates had told her was the reason for the change of attitude toward her. He suggested the evidence was admissible as part of the *res gestae*, but the trial judge ruled that this testimony was clearly hearsay and not admissible under any of the hearsay exceptions.

A licensed clinical psychologist appeared on behalf of the plaintiff and was permitted to testify as an expert witness. He stated he had treated the plaintiff since 1976. When she left for New York she was no longer in need of professional treatment. About three months later she was in need of extensive treatment for chronic depression, a new problem which arose after the move to New York. It was his opinion that the release of the information from the school records into the community caused the minor plaintiff to be mislabeled and socially ostracized.

At the conclusion of the appellants' case, appellees moved for a directed verdict on each count of the declaration. The trial judge granted the motion as to the count requesting punitive damages but reserved the motion as to the other counts.

Appellees then offered the testimony of Mrs. Rogers, who testified that the psychological records were apparently sent by mistake by another employee of the Andover Phoenix Center Program and that it had been her intention to exclude the psychological information from the records. Appellees then offered Edward Miller, Director of Public Services of the Anne Arundel County Public Schools, who stated that the Board of Education had the right to send the complete record of a transferring pupil without the consent of the parents under the applicable C.O.M.A.R. regulations. Appellees' evidence was concluded by reading into the record the deposition of a Mr. William Moll, the principal of the school to which Kelly had transferred, and which she was still attending at the time of trial. Mr. Moll stated that her grades at the school were average or better, and that she had had no unusual emotional problem of adjustment that he was aware of since her transfer. He received her records from

Anne Arundel County and gave them to the Guidance Director of the school. So far as he knew no other person had access to the records, which were kept under lock and key by the Guidance Director. No use of the psychological records had been made in Kelly's case because it did not become necessary.

At the conclusion of the appellees' case, they again moved for directed verdict and the motion was granted by the trial judge. It is from that judgment that this appeal was seasonably filed. Appellants raise the two following issues to be answered by this appeal:

> 1. Did the trial court err in refusing to allow the minor plaintiff to testify concerning what she was told by her fellow students in New York?
>
> 2. Was there legally sufficient evidence of unwarranted invasion of plaintiff's privacy which required the case to be submitted to the jury?

## 1.

Appellants suggest that the trial court erred when it refused to allow the minor plaintiff to testify as to what was said to her by fellow students in New York. In their brief they suggest the evidence should have been permitted to come in as part of the *res gestae*. In support of their position they offer the treatise by Morgan, *A Suggested Classification of Utterances Admissible as Res Gestae,* 31 Yale L.J. 229 (1922), cited by this Court in the cases of *Cluster v. Cole,* 21 Md. App. 242, 319 A.2d 320 (1974), and *Honick v. Walden,* 10 Md. App. 714, 272 A.2d 406 (1971). The problem in this case is that no foundation for the determination of whether the trial judge erred is found in the record extract. The only evidence offered by the minor plaintiff in response to her counsel's questions was as follows:

> Q  And when you first got there, were you able to make friends with the people in the community?

A   Yes.

Q   And did you have friends in school?

A   Yes, a lot.

Q   And how long did you — well, did there come a time when there was a change in this situation?

A   Yes.

Q   And approximately when did this occur?

A   A week later, a week, week and a half.

Q   And what happened?

A   Nobody would talk to me any more. They just were cold to me. I would say, hi, they would say, hi, and that would be it.

Q   Now, were you able to determine what was wrong?

MR. BOLGIANO: I object.

COURT: Sustained. If they told her what was wrong, that would be hearsay.

MR. AYRES: Well, not if — I asked her if she could determine, not if somebody told her.

COURT: Well, the only way she could determine it is by someone telling her. Wouldn't it be?

MR. AYRES: Or an event that happened.

COURT: I think you would have to rephrase it.

MR. AYRES: Okay, I'll rephrase it.

Q   Did some event happen that gave you an idea of — of why this situation changed?

A   Yes. Some — some kids were laughing at me, and some of them mentioned a psychiatrist.

MR. BOLGIANO: Objection, and move to strike.

COURT: Strike it.

We find nothing in this testimony which would render it admissible as a part of the *res gestae.* No proffer was made

as to the facts and circumstances surrounding the occurrence of the alleged incident. There was no foundation laid to present the circumstances under which the person making the alleged remark about the psychiatrist made it as a result of a spontaneous and instinctive reaction under such circumstances as to show a lack of forthought or deliberate design on the part of the declarant. The statements were supposedly made by more than one person, none of whom was under oath or subject to cross-examination, and under circumstances so inherently untrustworthy as to preclude their admission as *res gestae*.[1]

2.

Maryland Rule 552 a states:

> In an action tried by a jury any party may move, at the close of the evidence offered by an opponent or at the close of all the evidence, for a directed verdict in his favor on any or all of the issues. Such motion shall state the grounds therefor. An objection on behalf of the adverse party to such motion shall be entered as of course.

In ruling upon a motion for a directed verdict, the court must resolve all evidentiary conflicts and inferences that may naturally and legitimately be deduced therefrom in favor of the plaintiff's right to recover. *Plitt v. Greenberg,* 242 Md. 359, 219 A.2d 237 (1966); *Langville v. Glen Burnie Coach Lines, Inc.,* 233 Md. 181, 195 A.2d 717 (1963); *Smith v. Bernfeld,* 226 Md. 400, 174 A.2d 53 (1961). The Court of Appeals in the case of *Plitt v. Greenberg, supra,* stated:

> This Court has always maintained that if there be any legally relevant and competent evidence, however slight, from which a rational mind could infer a fact in issue, then a trial court has invaded the province of the jury by declaring a directed verdict. *Geschwendt v. Yoe,* 174 Md. 374, 381, 198 A. 720

---

1. For further discussion relative to *res gestae see Gray v. State,* 53 Md. App. 699, 456 A.2d 1290 (1983).

(1938); *Hanrahan v. Baltimore,* 114 Md. 517, 535, 80 A. 312 (1911) and prior Maryland cases cited therein. Judge Horney, for the Court, in *Smack v. Jackson,* 238 Md. 35, 37, 207 A.2d 511 (1965) stated the rule succinctly when he said: "[A] party is not entitled to a directed verdict in his favor unless the facts and circumstances are such as to permit of only one inference with regard to the issue presented." [242 Md. at 368].

The Court of Appeals has had several cases before it in which it has considered the tort of invasion of privacy. In *Carr v. Watkins,* 227 Md. 578, 177 A.2d 841 (1962), it initially announced that in a "proper case" the tort of unwarranted interference with an individual's privacy would be recognized in Maryland.

In *Household Finance Corp. v. Bridge,* 252 Md. 531, 250 A.2d 878 (1969), the Court of Appeals extensively analyzed the legal effect of an unwarranted oral invasion of privacy. In that case the Court stated:

> The whole area of invasion of privacy has been brought into better focus in the past several years and its present status is best expressed by Professor Prosser in his *Handbook of the Law of Torts,* (3d ed. 1964) Ch. 22, p. 832, wherein it is stated:
>
> > "The early cases in all jurisdictions were understandably preoccupied with the question whether the right of privacy existed at all, and gave little or no consideration to what it would amount to if it did. Today, with something over three hundred cases in the books, some rather definite conclusions are possible. What has emerged is no very simple matter. *It is not one tort, but a complex of four. The law of privacy comprises four distinct kinds of invasion of four different interests of the plaintiff,* which are tied together by the common name, but otherwise have almost nothing in common

except that *each represents an interference with the right of the plaintiff 'to be let alone.'* " (Emphasis supplied.)

Professor Prosser is now the Reporter for the *Restatement,* covering the sections on invasion of privacy, and in Tentative Draft No. 13, published April 27, 1967, of the *Restatement of the Law, Second, Torts* there is found listed in § 652A the four different *kinds* of invasions of privacy:

"§ 652A. *Meaning of Invasion of Privacy*

The Right of Privacy is Invaded When There Is

(a) Unreasonable intrusion upon the seclusion of another, * * *

(b) Appropriation of the other's name or likeness, * * *

(c) Unreasonable publicity given to the other's private life, * * *

(d) Publicity which unreasonably places the other in a false light before the public, * * * *."

The text writers and authorities make it clear that an invasion of the right of privacy by anyone of the above four courses of conduct may give rise to a cause of action and, on occasion, there may be an overlapping or concurrent invasion by any or all of the above means working toward the injury of the plaintiff. *Restatement Second,* 652A, Comment d. [252 Md. at 537-538].

It is clear to us that on the facts in this case neither subsection (a) nor (b) is involved in the alleged invasion of privacy in this case. The appellant suggests an overlapping of violations of subsections (c) and (d). We think it might be useful to analyze the cases on the subject of invasion of privacy which have reached the Court of Appeals.

In *Household Finance, supra,* the Court had before it an alleged invasion of privacy arising out of an "unreasonable

intrusion" and "unreasonable publicity" given to a private fact, *i.e.,* communication between a creditor (appellant) and the debtor's (appellee's) employer. In reversing judgment in favor of the debtor, the Court of Appeals held that evidence establishing that the creditor had made five or six dunning phone calls to the appellee and two or three to her parents as well as several calls to her employer over an 11-month period was not sufficient to justify the denial of a motion for directed verdict by the appellant. *Cf. Summit Loans, Inc. v. Pecola,* 265 Md. 43, 288 A.2d 114 (1972), where the Court of Appeals affirmed a judgment for invasion of privacy where there was evidence which would justify a jury in concluding that the appellant has used vile, insulting language in a large number of phone calls over a long period of time indicating a *deliberate and persistent course of improper conduct.* [Emphasis supplied]. Under these circumstances, the Court of Appeals held there was no error by the trial court in denying defendant's motion for directed verdict and submitting the case to the jury for its determination.

In *Beane v. McMullen,* 265 Md. 585, 291 A.2d 37 (1972), the Court of Appeals had before it a case involving a claim for damages alleging invasion of privacy arising out of numerous complaints by the appellee concerning zoning violations on the appellant's property. The Court of Appeals held that reasonableness, under the facts presented, was the standard to be considered as the determining factor whether an invasion of privacy had occurred. It reiterated the oft-repeated legal precept that in the consideration of a motion for directed verdict the nonmoving party is entitled to a resolution in his favor of conflicts in testimony and to all the benefits of reasonable inferences to be drawn from that evidence. [265 Md. at 600-601].

Applying that yardstick to numerous complaints by the appellee made in a normal manner, solely to governmental officials, without undue persistence, as a result of which governmental inspections were made, was held by the Court to be reasonable and justified and did not constitute an invasion of privacy.

The most recent case involving an alleged invasion of privacy is *Hollander v. Lubow,* 277 Md. 47, 351 A.2d 421 (1976). In that case the plaintiff obtained a verdict below on the basis of evidence that the defendants had disclosed his private affairs which the plaintiff contended he was entitled to keep private. The specific factual information disclosed was the plaintiff's interest in a partnership.

Judge Smith, speaking for the Court of Appeals, analyzed the law as stated in the Restatement of Torts, Second, *supra,* in the light of the evidence presented in the case as follows:

> Accordingly, for liability to exist here that which was done must constitute an "[i]ntrusion upon the seclusion of another" or "[p]ublicity given to the other's private life" since what is involved in no way constitutes "[a]ppropriation of the other's name or likeness" or "[p]ublicity which places the other in a false light before the public. . . ."
>
> Insight into this tort is provided by the language of §§ 652B and 652D:
>
> "§ 652B. *Intrusion Upon Seclusion*
>
> One who *intentionally* intrudes, physically or otherwise, upon the solitude or seclusion of another, or his private affairs or concerns, is subject to liability to the other for unreasonable invasion of his privacy, if the intrusion would be highly offensive to a reasonable person."
> [Emphasis supplied.]
>
> "§ 652D. *Publicity Given To Private Life*
>
> One who gives publicity to a matter concerning the private life of another is subject to liability to the other for unreasonable invasion of his privacy, if the matter publicized is of a kind which
>
> > (a) Would be highly offensive to a reasonable person, and

> (b) Is not of legitimate concern to the public."

Probably more germane to the facts in the case at bar is the alleged tortious disclosure of private facts. In discussing that facet of invasion of privacy, Judge Smith quoted extensively from the notes and comments included in the Restatement, *supra,* on the subject of disclosure of private facts.

On the subject of disclosure of private facts [Prosser] states:

> A second group of cases have found a cause of action in publicity, of a highly objectionable kind, given to private information about the plaintiff, even though it is true and no action would lie for defamation. . . .

> \* \* \*

Some limits of this branch of the right of privacy appear to be fairly well marked out. The disclosure of the private facts must be a public disclosure, and not a private one; there must be, in other words, publicity. . . .

> The final limitation is that the matter made public must be one which would be offensive and objectionable to a reasonable man of ordinary sensibilities. The law is not for the protection of the hypersensitive, and all of us must, to some reasonable extent, lead lives exposed to the public gaze.

Prosser summarized the law relative to this tort (or these four torts) when he said:

> It is evident that these four forms of invasion of privacy are distinct, and based on different elements. It is the failure to recognize this which has been responsible for much of the apparent confusion in the decisions. Taking them in order — intrusion, disclosure, false light, and appropriation — the first and second require the invasion of something secret, secluded or private pertaining to

the plaintiff; the third and fourth do not. The second and third depend upon publicity, while the first does not, nor does the fourth, although it usually involves it. The third requires falsity or fiction; the other three do not. The fourth involves a use for the defendant's advantage, which is not true of the rest. [277 Md. at 57].

The Court of Appeals in reversing the judgments in *Hollander,* reiterated Judge Barnes' statement for the Court in *Beane v. McMullen, supra,* that "In all types of invasions of privacy, except perhaps '(b) Appropriation of the other's name or likeness,' reasonableness under the facts presented is the determining factor." [265 Md. at 600-601].

We are required, therefore, to consider the evidence in this case and to determine whether *unreasonable* publicity was given to the plaintiff's private life or an invasion of privacy occurred which *unreasonably* placed the plaintiff in a false light before the public. The trial court, mindful of its duty to resolve all evidentiary conflicts and inferences in favor of the plaintiff's right to recover, granted defendant's motion for a directed verdict at the conclusion of all the evidence. We conclude the trial court did not err.

Appellant's complaint was that the defendants had agreed not to send the plaintiff's psychological records to the New York school where she was being admitted as a transfer student and that the subsequent dispatch of these records to the school amounted to such an invasion of the child's privacy as to make the defendants answerable in damages. The appellants based their case primarily on the uncontradicted fact that they, as parents, signed a consent form permitting the transfer of all Kelly's records except the behavioral and psychological files. The evidence clearly established, however, that the consent of the parents was not necessary in order to permit the transfer of all the child's records to the new school. *See* C.O.M.A.R. 13A, 08.02.18.

The necessity for the adoption of such a regulation was clearly demonstrated by the witness Miller who pointed out

that the psychological background and the prior behavioral pattern of a transferring student was vital information required for the planning of an appropriate educational program and to provide for the social and emotional needs of the student.

The evidence made it clear that the records were mailed directly to the principal of the school in New York and delivered by him to the custody of the chief school guidance counsellor. The uncontradicted evidence was that thereafter the records were kept under lock and key. Appellants offered no evidence that there was any unwarranted publicity given to the information contained in the records either by the Anne Arundel County or New York school authorities. There was no evidence that any person other than those entitled to receive the information had ever been permitted access to the records or to any of the information included in them. Under the facts and circumstances in this case we find no evidence to support appellants' contention that the trial court should have denied appellees' motion for a directed verdict.

*Judgments affirmed.*
*Costs to be paid by appellants.*