744 A.2d 583

**Irving M. FURMAN, et al.**

**v.**

**Hubert Austin SHEPPARD, et al.**

**No. 5134, Sept. Term, 1998.**

Court of Special Appeals of Maryland.

Jan. 18, 2000.

70

David A. Tibbetts, Annapolis, for appellants.

Anthony W. Kraus (Miles & Stockbridge, P.C., on the brief), Baltimore, for appellees, Valiant Ins. Co., Fizer and Crogan.

Glenn W. Trimmer and Rollins, Smalkin, Richards & Mackie, on the brief, Baltimore, for appellees, Sheppard and the Premier Group.

Argued before MURPHY, C.J., and THIEME and DURKE G. THOMPSON (Specially Assigned), JJ.

MURPHY, Chief Judge.

This appeal from the Circuit Court for Anne Arundel County presents the question of whether invasion of privacy claims can be asserted against a trespasser who observes nothing more than what could be seen by persons who were not trespassing.[1] Appellants Irving, Jill, and Sarah Furman (hereinafter referred to as "the Furmans") present the following question for our review:

---

1. Trespassing on "posted" property is a misdemeanor. *See* Md.Code Ann., Art. 27, § 577 (1999 Supp.). Trespassing may also give rise to a civil action in which, when no particular amount of damages has been proven, nominal damages are to be awarded. *Timanus v. Leonard,* 121 Md. 583, 589, 89 A. 99 (1913).

Did the Circuit Court err in granting the motion to dismiss for the invasion of privacy claims when an investigator trespassed onto a private club to videotape appellants sailing on their yacht?

## Background

The Furmans were members of the Maryland Yacht Club in Pasadena, Maryland at a time when Irving Furman (husband to Jill and father to Sarah) was the plaintiff in a personal injury case. It is undisputed that the Maryland Yacht Club is a private club, "surrounded by an electronic security fence, and conspicuously posted with 'Trespassers will be Prosecuted' signs." In addition, "the gate to the club can only be opened by a magnetic card."

Appellants filed a complaint in the Circuit Court for Anne Arundel County, asserting that on September 20, 1997, appellee [2] Hubert Austin Sheppard (1) drove to the yacht club, (2) waited until a club member opened the gate, (3) then drove onto the grounds before the gate closed, (4) "parked his vehicle in a separate parking lot reserved for guests, overlooking the member parking lot and pier areas," and (5) videotaped the appellants without their consent. Copies of the videotapes were sent to the other appellees. According to appellants, "the tape was also published and circulated to parties unknown in the court system, and to various individuals at the [appellees'] various offices."

Appellants alleged that appellees had (1) intruded upon their seclusion; (2) placed them in a false light; and (3) publicized private facts about them.[3] Appellees filed motions

---

**2.** The appellees are Mr. Sheppard (the investigator), The Premier Group (the investigator's employer), James X. Crogan and Timothy E. Fizer (defense counsel in the personal injury suit), McNamara & Fizer (their law firm), and Valiant Insurance Company, Inc. (the insurer of the defendant in the personal injury action).

**3.** Appellants requested (compensatory and punitive) damages for the humiliation and mental distress they suffered upon learning of the videotape, and pursued some claims under a respondeat superior

to dismiss each count of the complaint. After a hearing, those motions were granted and this appeal followed, in which appellants contend that the complaint contained enough facts to survive a motion to dismiss.

## Discussion

### I. Invasion of Privacy Claims

### A. Intrusion Upon Seclusion

According to appellants, because (1) the yacht club was not a public place, and (2) the investigator trespassed onto an area in which the appellants had a reasonable expectation of privacy, an actionable intrusion occurred. We disagree. Maryland has adopted the following definition of intrusion:

> The intentional intrusion upon the solitude or seclusion of another or his private affairs or concerns that would be highly offensive to a reasonable person.

*Pemberton v. Bethlehem Steel Corp.*, 66 Md.App. 133, 163, 502 A.2d 1101 (1986), *citing* Restatement of Torts 2d, § 652B. To determine whether the surveillance constituted an actionable intrusion under Maryland law, we ask whether there has been an

> intrusion into a private place or the invasion of a private seclusion that the plaintiff has thrown about his person or affairs. There is no liability for observing him in public places since he is not then in seclusion.

*Id.* If surveillance is "conducted in a reasonable and non-obtrusive manner, it is not actionable." *Id., citing McLain v. Boise Cascade Corporation*, 271 Or. 549, 533 P.2d 343 (1975); *Forster v. Manchester*, 410 Pa. 192, 189 A.2d 147 (1963); *Ellenberg v. Pinkerton's, Inc.*, 130 Ga.App. 254, 202 S.E.2d 701 (1973).

---

theory. Appellants alleged that the video indicated to the community that Mr. and Mrs. Furman were affluent citizens—an indication that posed a danger to Sarah, who might be kidnaped as a result of the contents of the video.

The fact that Mr. Sheppard made the observations while trespassing at appellants' private club does not establish a violation of any reasonable expectation of privacy. Not every trespass constitutes an unreasonable search or intrusion. A trespass "becomes relevant only when it invades a defendant's reasonable expectation of privacy." *McMillian v. State*, 85 Md.App. 367, 394, 584 A.2d 88 (1991), vacated on other grounds, 325 Md. 272, 600 A.2d 430 (1992). The *McMillian* Court noted that "an individual's reasonable expectation of privacy reaches its zenith in the home." *Id.* On the other hand,

> business and commercial enterprises generally are not as private as a residence ... although a club operated for a select clientele may not be public, the fact that the premises are maintained as a club with a membership policy is not conclusive in favor of the club. Failure to enforce limitations on admittance would warrant the conclusion that the persons operating the club had no reasonable expectations of privacy.

*Id.*

In *Dye v. State*, 650 P.2d 418 (Alaska App.1982), a fish biologist trespassed onto a ship to observe Dye's commission of alleged illegal acts. The Alaskan appellate court accepted the appellant's arguments that (1) this trespass *did* constitute a search, and (2) appellant had a subjective expectation of privacy in the boat. The court held, however, that the appellant's subjective expectation of privacy was not one that society was prepared to accept as objectively reasonable because

> the only evidence observed ... was in the process of being moved onto the deck where it would have been in plain view.

*Id.* at 421–422. *Dye* was cited with approval in *Burnett v. Municipality of Anchorage*, 678 P.2d 1364 (Alaska App.1984), which in turn was cited with approval in *Pemberton v. Bethlehem Steel Corp.*, 66 Md.App. 133, 502 A.2d 1101.

Appellant's involvement in a personal injury lawsuit further lessened his expectation of privacy.[4] A personal injury claimant should reasonably

expect reasonable inquiry and investigation to be made of her claim and to this extent her interest in privacy is circumscribed ... there is much social utility to be gained from these investigations. It is in the best interests of society that valid claims be ascertained and fabricated claims be exposed.

*Forster v. Manchester,* 410 Pa. 192, 197, 189 A.2d 147 (1963). The appellant in *Manchester* was the plaintiff in a personal injury suit, whose actions on a boat were in the public view. The Supreme Court of Pennsylvania noted that

appellant's activities could be observed by passers by. To this extent appellant has exposed herself to public observation and therefore is not entitled to the same degree of privacy that she would enjoy within the confines of her own home.

*Id.* The surveillance conducted by Mr. Sheppard involved nothing more than observations of appellants while they were on or near a yacht situated in a public waterway and in open view of the public. As the circuit court noted, appellants

were performing acts which were in public view to other members of the club and to people boating in the water. Working on a boat may be important to a tort suit, when the ability of Plaintiff to do heavy work is at issue, but it is scarcely such as would be an intrusion on Plaintiff's right to seclusion.

In *McLain v. Boise Cascade Corporation,* 271 Or. 549, 533 P.2d 343 (1975), the appellant sued his employer for invasion of privacy and trespass because, after appellant had asserted a worker's compensation claim, the employer hired an investigator who trespassed onto plaintiff's property and

---

**4.** *See Shenk v. Berger,* 86 Md.App. 498, 587 A.2d 551 (1991) for a discussion of discovery and evidentiary issues involving surveillance films of a plaintiff's activities.

conducted surveillance without plaintiff's knowledge. The surveillance produced film and photos that were used against appellant at the worker's compensation hearing. After noting that appellant's involvement in the worker's compensation suit lessened his expectation of privacy "to the extent of a reasonable investigation," the Supreme Court of Oregon rejected the argument that trespass constituted an invasion of privacy:

[1] the surveillance and picture taking were done in such an unobtrusive manner that plaintiff was not aware that he was being watched and filmed ... [2] plaintiff conceded that his activities which were filmed could have been observed by his neighbors or passers by on the road running in front of his property. [3] undoubtedly the investigators trespassed on plaintiff's land while watching and taking pictures of him, but ... [the trespass] did not constitute an unreasonable surveillance "highly offensive to a reasonable man ..."

We think that trespass is only one factor to be considered in determining whether the surveillance was unreasonable. Trespass to peer in windows and to annoy or harass the occupant may be unreasonable. Trespass alone cannot automatically change an otherwise reasonable surveillance into an unreasonable one. The one trespass which was observed by plaintiff did not alert him to the fact that he was being watched or that his activities were being filmed. The record is clear that the trespass was confined to a narrow strip along the east boundary of plaintiff's property. All the surveillance in this case was done during daylight hours and when plaintiff was exposed to public view by his neighbors and passers by.

*Id.* at 346–347. In this case, because appellants were seen doing things that could be observed by non-trespassing members of the general public, the circuit court correctly dismissed their intrusion claims.

## B. False Light

 Appellants also claim that the circuit court erred in granting appellees' motion to dismiss on the false light claim. False light invasion of privacy has been defined as follows:

One who gives publicity to a matter concerning another that places the other before the public in a false light is subject to liability to the other for invasion of privacy, if (a) the false light in which the other person was placed would be highly offensive to a reasonable person, and (b) the actor had knowledge of or acted in reckless disregard as to the falsity of the publicized matter and the false light in which the other would be placed.

*Bagwell v. Peninsula Regional Medical Center,* 106 Md.App. 470, 513–514, 665 A.2d 297 (1995), citing Restatement (2d) Torts § 652E. This tort requires publicity, meaning that "the disclosure of the private facts must be a public disclosure, and not a private one." *Hollander v. Lubow,* 277 Md. 47, 57, 351 A.2d 421 (1976). Complete defenses exist where (1) the statement is true, or (2) the plaintiff consented to the publication. *Id.*

 The circuit court correctly granted appellees' motion to dismiss because the information was true. The video showed (1) Mr. Furman conducting activities that he did indeed perform; and (2) appellants spending a day on their yacht. Because these activities were admittedly true, publication of them is not actionable under a false light theory.

## C. Publicizing Private Facts About Appellants

 Appellants further allege that the circuit court erred in granting the motion to dismiss the claim that appellees publicized private facts about appellants. The tort of publicity given to private life has been defined as follows:

One who gives publicity to a matter concerning the private life of another is subject to liability to the other for unreasonable invasion of his privacy, if the matter publicized is of a kind which (a) would be highly offensive to a reasonable person, and (b) is not of legitimate concern to the public.

*Klipa v. Board of Educ. Of Anne Arundel County,* 54 Md.App. 644, 654–655, 460 A.2d 601 (1983), citing Restatement (2d) Torts § 652D. In order to succeed on a claim of this nature, the "matter disclosed must be a private fact and it must be

made public." *Pemberton v. Bethlehem Steel Corp.*, 66 Md. App. at 166, 502 A.2d 1101. The publication element required is as follows:

> It is not an invasion of the right of privacy . . . to communicate a fact concerning the plaintiff's private life to a single person or even to a small group of persons.

*Id.* The public matter, however, must be one that is "offensive and objectionable to a reasonable man of ordinary sensibilities." *Klipa*, 54 Md.App. at 655, 460 A.2d 601. There is an obvious reason for this requirement:

> The law is not for the protection of the hypersensitive, and all of us must, to some reasonable extent, lead lives exposed to the public gaze.

*Id.* In examining a claim of this nature, courts have held that "reasonableness under the facts presented is the determining factor." *Id.* at 656, 460 A.2d 601.

 The circuit court correctly granted the motion to dismiss this claim. The surveillance films and photos would have been admissible at trial had Mr. Furman's personal injury claim not been settled. Thus, the information recovered was not private in nature. While appellants did belong to a "private" yacht club, their yacht was in navigable water in open view to the public. There is simply "no liability when the defendant merely gives further publicity to information about the plaintiff that is already public." *Pemberton*, 66 Md.App. at 167, 502 A.2d 1101, citing Restatement 2d § 652D, comment b. Thus, the circuit court correctly granted appellees' motion to dismiss.

## II. Punitive Damage & Respondeat Superior Claims

Appellants also complain about the dismissal of their punitive damage and respondeat superior claims. For the reasons stated above, these issues are moot.

**JUDGMENTS AFFIRMED; COSTS TO BE PAID BY APPELLANTS.**