*227 SHEDD, Circuit Judge,
concurring in the judgment:
Although I agree with the majority that the judgment below must be reversed, I would do so on different grounds. As I explain below, I would hold that Snyder failed to prove at trial sufficient evidence to support the jury verdict on any of his tort claims. Because the appeal can be decided on this non-constitutional basis, I would not reach the First Amendment issue addressed by the majority.
I.
A.
Under the doctrine of constitutional avoidance, we are to avoid constitutional determinations when other grounds exist for the disposition of the case. See Ashwander v. Tenn. Valley Auth, 297 U.S. 288, 347, 56 S.Ct. 466, 80 L.Ed. 688 (1936) (Brandeis, J., concurring) (“It is not the habit of the court to decide questions of a constitutional nature unless absolutely necessary to a decision of the case.”) (internal citation and quotations marks omitted); see also Bell Atl. Md., Inc. v. Prince George’s County, 212 F.3d 863, 866 (4th Cir.2000) (holding that “by deciding the constitutional question of preemption in advance of considering the state law questions upon which the case might have been disposed of, the district court committed reversible error”). Because the viability vel non of the state torts is dispositive as a nonconstitutional ground on which to decide this case, I would proceed to consider that issue in the first instance. To do otherwise would turn the principle of constitutional avoidance on its head; rather than avoiding unnecessary constitutional issues, we allow the parties to structure the case in order to force us to reach constitutional issues.
Neither the Phelps nor Snyder argue on appeal that the torts are deficient as a matter of law. Ordinarily, where a party fails to raise an issue in its opening brief, we deem the issue to be waived. See Cavallo v. Star Enterprise, 100 F.3d 1150, 1152 n. 2 (4th Cir.1996). Moreover, where an issue is raised only in an amicus brief, we generally decline to consider it. See United States v. Buculei, 262 F.3d 322, 333 n. 11 (4th Cir.2001). However, that rule is not absolute, and I believe it is within our authority to consider an issue not raised by the parties.
Our judicial power to decide a case is not limited by the arguments and actions of the parties. Moreover, while we “normally” decline to decide an issue not raised by the parties, “normally” necessarily implies that we are not precluded from doing so under certain circumstances. See Carter v. Lee, 283 F.3d 240, 252 (4th Cir.2002) (noting that “this Court normally views contentions not raised in an opening brief to be waived”) (emphasis added); see also Cousin v. Trans Union Corp., 246 F.3d 359, 373 n. 22 (5th Cir.2001) (noting that although issues not raised in initial brief are normally waived, the court has discretion to decide the issue); Bridges v. City of Bossier, 92 F.3d 329, 335 n. 8 (5th Cir. 1996) (electing to examine purely legal issue not raised by party in opening brief, but raised by amicus curiae in its initial brief); Estate of Lisle v. CIR, 341 F.3d 364, 384 (5th Cir.2003) (holding that “[w]hile we may in our discretion decline to consider issues not raised in an initial brief, we choose to address the issue here”). Indeed, the Supreme Court has approved this practice. See Teague v. Lane, 489 U.S. 288, 300, 109 S.Ct. 1060, 103 L.Ed.2d 334 (1989) (plurality opinion); see also Davis v. United States, 512 U.S. 452, 457 n. 1, 114 S.Ct. 2350, 129 L.Ed.2d 362 (1994).
A case from the United States Court of Appeals for the District of Columbia Circuit is instructive on this point. See Inde *228 pendent Ins. Agents of America, Inc. v. Clarke, 955 F.2d 731 (D.C.Cir.1992) (disposing of a case on a basis not advanced by the parties), rev’d on other grounds sub nom. U.S. Nat. Bank of Oregon v. Independent Ins. Agents of America, Inc., 508 U.S. 439, 445-47, 113 S.Ct. 2173, 124 L.Ed.2d 402 (1993). In denying rehearing en banc, a judge of that court noted
Our colleagues question the “judicial power” of a federal court to decide an issue of law concededly dispositive of the case where parties have not raised the issue. I think it most apparent that federal courts do possess this power. The alternative is that the parties could force a federal court to render an advisory opinion. What the dissenters in effect argue is that the parties can stipulate to the state of underlying law; frame a law suit, assuming that stipulation; and obtain from the court a ruling as to what the otherwise dispositive law would be if the stipulated case were in fact the law. Indeed, that is precisely what would have occurred in this case had the panel not, sua sponte, raised the question....
Independent Ins. Agents of America, Inc. v. Clarke, 965 F.2d 1077, 1078 (D.C.Cir. 1992) (Sentelle, J., concurring)(emphasis added). Following the denial of rehearing en banc, the Supreme Court granted a writ of certiorari and specifically noted that the circuit court did have the authority to raise and decide an issue not raised by the parties. See Independent Ins. Agents of America, 508 U.S. at 447, 113 S.Ct. 2173 (noting that “[t]he contrary conclusion would permit litigants, by agreeing on the legal issue presented, to extract the opinion of a court on hypothetical Acts of Congress or dubious constitutional principles, an opinion that would be difficult to characterize as anything but advisory”). Thus, I believe we have the power to decide issues not raised by the parties and should exercise that power under certain circumstances.
Here, moreover, the dispositive nonconstitutional ground is already before us as the Thomas Jefferson Center for the Protection for Free Expression (“the Center”), which we permitted to file an amicus curiae brief, argues that the underlying state law torts are legally deficient. See Brief of the Thomas Jefferson Center for the Protection of Free Expression, at 15-30. Specifically, the Center contends that Snyder failed to establish that the Phelps intruded upon his seclusion or that the Phelps’ activities are outrageous under Maryland law.
Thus, I am persuaded that we should consider the issues raised by the Center for several reasons. First, the Phelps clearly challenged the legal sufficiency of the state law torts in the district court by way of a motion for summary judgment and later in their post-trial motions. Second, Snyder has directly responded in this appeal to the issues that the Center raises. Third, and most importantly, the principle of constitutional avoidance requires us to avoid constitutional determinations when other grounds exist for the disposition of the case. Here, because the state law torts are not supported by the evidence presented at trial, I would reverse under state law and not under the First Amendment.
B.
Under Count One, the jury found the Phelps liable for the state law tort of “invasion of privacy by intrusion upon seclusion” because the Phelps invaded Albert Snyder’s privacy during his time of bereavement. The jury was instructed that the elements of this claim are: “(1) An intentional (2) intrusion or prying upon (3) something which is and is entitled to be private (4) in a manner which is highly *229 offensive to a reasonable person.” J.A. 3110. Snyder apparently claims an intrusion upon seclusion occurred because of the Phelps’ funeral protest and the television coverage thereof, and because of the “epic” which he found on the Internet several weeks after the funeral.
Under Maryland law, an “intrusion” occurs when there has been some act that interferes “into a private place or the invasion of a private seclusion that the plaintiff has thrown about his person or affairs.” Furman v. Sheppard, 130 Md.App. 67, 744 A.2d 583, 586 (2000) (internal citation and quotation marks omitted). Expounding on the types of “intrusion” Maryland law recognizes, the Maryland Court of Appeals has stated:
[this tort] consists of intrusion upon the plaintiffs physical solitude or seclusion, as by invading his home or other quarters, or an illegal search of his shopping bag in a store. The principle has, however, been carried beyond such physical intrusion, and extended to eavesdropping upon private conversations by means of wire tapping and microphones; and there are decisions indicating that it is to be applied to peering into the windows of a home, as well as persistent and unwanted telephone calls. The tort has been found in the case of unauthorized prying into the plaintiffs bank account, and the same principle has been used to invalidate a blanket subpoena duces tecum requiring the production of all his books and documents, and an illegal compulsory blood test.
It is clear, however, that there must be something in the nature of prying or intrusion....
Hollander v. Lubow, 277 Md. 47, 351 A.2d 421, 425-26 (1976) (internal citations and quotation marks omitted). Several cases illustrate the type of conduct which constitutes an “intrusion upon seclusion” under Maryland law.
In Furman, a private club member who had been a plaintiff in an earlier lawsuit in which he claimed to be injured, brought suit against a private investigator who worked for the defense counsel in that lawsuit and who trespassed into a private club to videotape the plaintiff sailing on his yacht. Furman, 744 A.2d at 585. The club was surrounded by a security fence with conspicuously posted “Trespassers will be Prosecuted” signs. Id. The Maryland Court of Special Appeals held that “[t]here is no liability for observing [the plaintiff] in public places since he is not then in seclusion.” Id. at 586. Even though he was in a private club, the court concluded that the plaintiff was in public because he was exposed to “public view by his neighbors and passers by.” Id. at 587. Accordingly, the court ruled that there was no intrusion into his seclusion. Id.
In Hollander, the plaintiff sued several individuals and a bank for their revealing the fact that the plaintiff was a partner in a mortgage firm. Hollander, 351 A.2d at 422. For this, the plaintiff brought a claim for invasion of privacy by intrusion upon seclusion, among other claims. Id. The Maryland Court of Appeals held that there were no private facts revealed and, therefore, there was no intrusion upon seclusion. Id. at 426. The court elaborated:
[t]he plaintiff cannot complain when an occupation in which he publicly engages is called to public attention, or when publicity is given to matters such as the date of his birth or marriage, or his military service record, which are a matter of public record, and open to public inspection. It seems to be generally agreed that anything visible in a public place can be recorded and given circulation by means of a photograph, to the same extent as by a written description, since this amounts to nothing more than giving publicity to what is already public and what anyone present would be free to see. The contention that when an *230 individual is thus singled out from the public scene and undue attention is focused upon him, there is an invasion of his private rights, has not been borne out by the decisions. On the other hand, it is clear that when a picture is taken without the plaintiffs consent in a private place, or one already made is stolen, or obtained by bribery or other inducement of breach of trust, the plaintiffs appearance which is thus made public is still a private thing, and there is an invasion of a private right, for which an action will lie.
Id. (internal citation and quotation marks omitted) (emphasis added).
Additionally, where Maryland courts have recognized this cause of action, I find nothing analogous to Snyder’s claim. For example, in Mitchell v. Baltimore Sun Co., 164 Md.App. 497, 883 A.2d 1008 (2005), a former congressman brought a cause of action for invasion of privacy by intrusion upon seclusion. His claim was based on two newspaper reporters who came to his nursing home room uninvited to purportedly investigate some of his unpaid bills. Id. at 1012. The reporters were aware that Mitchell was elderly and in failing health, and the nursing home had a sign that stated “NO TRESPASSING NO SOLICITING.” Id. The reporters asked him a series of questions, and when he asked them repeatedly to leave, they refused. Id. at 1012. Finally, the congressman asserted “that one of the reporters looked through some files that he had in a filing cabinet, box, or on a desk near his bed.” Id. 1012-13. In deciding to reverse summary judgment, the court held that these actions could constitute an intrusion upon seclusion under Maryland law. Id. at 1023-24.
In Pemberton v. Bethlehem Steel Corp., 66 Md.App. 133, 502 A.2d 1101 (1986), a local union president filed suit for intrusion upon seclusion based upon various types of surveillance the defendants conducted on him. The Maryland Court of Special Appeals held that placing a surveillance microphone on a hotel door in order to hear private conversations inside a hotel room may be actionable as an intrusion upon seclusion. However, the court further stated that other surveillance, such as watching the plaintiffs home from the street is not actionable as an intrusion upon seclusion because “there is no liability for observing [a person] in public places, since he is not then in seclusion.” Id. at 1116-17 (internal quotation marks omitted).
In light of these cases, it is clear that there was no type of “intrusion” under any of the bases that Snyder asserts. First, as to the funeral protest itself, the Phelps did not “intrude” or “pry” upon any private seclusion. The Phelps never intruded upon a private place because their protest occurred at all times in a public place that was designated by the police and located approximately 1,000 feet from the funeral. Further, the Phelps never confronted Snyder, and Snyder admits he could not see the protest. Finally, there was no intrusion because the evidence is undisputed that the church service was never disrupted. The Phelps never entered the church, and they stopped protesting when the church service began. In sum, I would hold the funeral protest did not intrude upon Snyder’s seclusion.[1]
*231 Likewise, I would hold that the Phelps’ posting of the “epic” on their church Internet website is not, as a matter of law, an intrusion upon Albert Snyder’s seclusion under Maryland law. In posting the “epic,” the Phelps did not do anything to direct it to Snyder’s attention, such as email or transmit it to him. Cf. Hollander, 351 A.2d at 426 (noting that repeated phone calls may give rise to an intrusion upon seclusion claim). Instead, Snyder learned of the “epic” during an Internet search, and upon finding it he chose to read it. By doing so, any interference with Snyder’s purported interest in seclusion was caused by Snyder himself rather than the Phelps.
In short, I conclude that the verdict on Count One cannot stand. The evidence is insufficient under Maryland law for the jury to have found that the Phelps committed any act that intruded upon Snyder’s right to seclusion.
C.
Under Count Two, the Phelps were held liable for intentional infliction of emotional distress. As charged to the jury, the elements for this tort are: (1) the Phelps’ conduct was intentional or reckless; (2) the conduct was extreme and outrageous; (3) the conduct caused emotional distress to Snyder; and (4) the emotional distress was severe. J.A. 3111.
Under Maryland law, the second element requires conduct “so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.” Pemberton, 502 A.2d at 1115 (internal citation and quotation marks omitted). The Maryland Court of Special Appeals has held that “[t]he tort of intentional infliction of emotional distress is rarely viable, and is to be used sparingly and only for opprobrious behavior that includes truly outrageous conduct.” Bagwell v. Peninsula Regional Medical Center, 106 Md.App. 470, 665 A.2d 297, 319 (1995) (internal citation and quotation marks omitted).[2] A review of Maryland cases illustrates the exacting burden of this element.
In Figueiredo-Torres v. Nickel, 321 Md. 642, 584 A.2d 69 (1991), the Maryland Court of Appeals upheld a claim for intentional infliction of emotional distress by a plaintiff whose psychologist had sexual relations with the plaintiffs wife. The court concluded that there was evidence of extreme and outrageous conduct “where a psychologist who is retained to improve a marital relationship implements a course of extreme conduct which is injurious to the patient and designed to facilitate a romantic, sexual relationship between the therapist and the patient’s spouse.” Id. at 75.
In B.N. v. K.K., 312 Md. 135, 538 A.2d 1175, 1177 (1988), the Maryland Court of Appeals upheld a claim for intentional infliction of emotional distress where the defendant failed to disclose to the plaintiff that he had a sexually transmitted disease prior to having sexual relations with her. The plaintiff thereafter contracted this disease. Id. The court noted that the element of extreme and outrageous conduct was supported because of the risks and side effects of the disease the plaintiff contracted from the defendant. Id. at 1180.
In a final case where the Maryland Court of Appeals has upheld a claim of intentional infliction of emotional distress, *232 the plaintiff had suffered physical and emotional trauma from being assaulted at work. See Young v. Hartford Accident & Indent. Co., 303 Md. 182, 492 A.2d 1270, 1271 (1985). After making disability payments, the defendant refused to pay certain doctor’s bills and insisted the plaintiff undergo another psychological evaluation despite a doctor’s warning of her fragile condition. Id. The court held that “[i]f [the plaintiff] proves that the sole purpose of [the psychologist’s] examination was to harass the Plaintiff into abandoning her claim, or into committing suicide,” the behavior would be extreme and outrageous. Id. at 1278 (internal quotation marks omitted).
On the other hand, Maryland has refused to uphold the tort in the context of other types of egregious conduct. In Mitchell, the two reporters entered a former congressman’s nursing home room uninvited, and looked through his files without permission. See 883 A.2d at 1012-13. Even though the congressman was in failing health and the reporters had been asked to leave, the court held that these facts did not show extreme and outrageous conduct and stated that “[w]e are not persuaded that the reporters’ questioning of Mitchell, even if conducted while trespassing, exceeded all possible bounds of decency, as to be regarded as atrocious, and utterly intolerable in a civilized society.” Id. at 1025 (internal citation and quotation marks omitted).
In Batson v. Shiflett, 325 Md. 684, 602 A.2d 1191 (1992), the president of a local union was continually harassed by the defendants in an attempt to remove him from local office and to undermine his position. The plaintiff alleged that the defendants defamed him and committed the tort of intentional infliction of emotional distress. Id. at 1195. The court upheld the defamation claim but held that even though the defendant’s conduct was defamatory, it “in no way satisfies our exacting standard for ‘extreme and outrageous conduct.’ ” Id. at 1217.
In this case, Snyder asserts that the protest was extreme and outrageous because the funeral was disrupted by having the procession re-routed; his grieving process was disrupted by his having to worry about his daughters observing the Phelps’ protest; and the Phelps’ messages on their protest signs were focused on his family. As earlier noted, the protest was confined to a public area under supervision and regulation of local law enforcement and did not disrupt the church service. Although reasonable people may disagree about the appropriateness of the Phelps’ protest, this conduct simply does not satisfy the heavy burden required for the tort of intentional infliction of emotional distress under Maryland law. Further, to the extent Snyder asserts the “epic” as a basis for this tort, I would find the “epic,” which the district court found to be non-defamatory as a matter of law, is not sufficient to support a finding of extreme and outrageous conduct. Therefore, I believe the verdict on Count Two must be reversed.[3]
II.
In sum, I find the evidence cannot support the state torts at issue in this appeal and, therefore, I would not reach the First Amendment analysis the majority imp *233 lores. Accordingly, I concur only in the result the majority reaches — the reversal of the judgment below.

. To the extent Snyder's claim is based on his viewing the Phelps' pro-test on television, I would find that television coverage of a public protest that occurred in a public area is not an “intrusion.” Cf. Hollander, 351 A.2d at 426 (noting that “[i]t seems to be generally agreed that anything visible in a public place can be recorded and given circulation by means of a photograph, to the same extent as by a written description, since this amounts to nothing more than giving publicity to what is already public and what anyone present would be free to see”).

. A 1997 case of the Maryland Court of Special Appeals noted that the tort of intentional infliction of emotional distress had been upheld on only three occasions since Maryland began recognizing the tort in 1977. See Pen-hollow v. Cecil County, 116 Md.App. 265, 695 A.2d 1268, 1285 (1997).

. The Phelps were also held liable for civil conspiracy under Count Three. Because the unlawful activity required for this count was the substantive offense of Count 1 or Count 2, this count must also be reversed. See Green v. Washington Suburban Sanitary Commission, 259 Md. 206, 269 A.2d 815, 824 (1970) (noting that "[a] civil conspiracy is a combination of two or more persons by an agreement or understanding to accomplish an unlawful act”).